JAMES SEAVER v. AUGUSTUS YOUNG, WILLIAM E. PADDOCK AND AMASA CORY.

When A. covenants to perform certain acts, and B. becomes bound to A. to perform the same acts, and save A. harmless from his liabilitiy, A. is not obliged to wait for a suit to be commenced upon his bond to compel him to perform the services required of him, nor to request B. to perform the same ; he may proceed and perform his covenants, if B. neglect to do it, and then recover from B., on his bond of indemnity, the full value of the services thus rendered by A.

There is no distinction between the principal and surety, as regards their liability on a bond ; the same act, or neglect, which charges the principal must charge the surety.

DEBT on a bond dated Jan. 25, 1833, executed to the plaintiff by one Alanson Seaver, as principal, and by the defendants as sureties, and conditioned that the said Alanson should support and maintain

Seaver *v.* Young et al.

Martha Seaver, mother of the plaintiff and of the said Alanson, and also that the said Alanson should save harmless the plaintiff from all charges and expense in providing for the support of the said Martha by virtue of an obligation entered into by the plaintiff, July 11, 1821, with Daniel Seaver, father of the plaintiff and of the said Alanson, and which was conditioned for the support of the said Daniel and Martha during their and each of their natural lives. The defendant pleaded *non est factum,* general performance, and *non damnificatus;* on which pleas issue was joined to the court.

On trial, the plaintiff gave in evidence the bond declared upon, and also the bond of July 11, 1821, therein referred to, and also " proved his expenditures in the support of his mother, the said Martha Seaver, after the execution of the bond declared upon, and until her death in October, 1840."

The defendants proved, that, shortly after the death of the said Daniel Seaver, which was in 1831, the bond of July 11, 1821, was in the plaintiff's possession, and that he had ever since retained it ;—that Alanson Seaver, being administrator upon the estate of Daniel Seaver, demanded said bond of the plaintiff, claiming that it was the property of the estate ;—but that the plaintiff evaded or refused said demand, and did not surrender the bond.

The defendants also introduced evidence tending to prove that Daniel Seaver, towards the close of his life, became uneasy lest the bond of July 11, 1821, should occasion trouble and litigation among his children after his death, and that he went to Samuel C. Crafts to have the bond so fixed as to prevent such trouble, and that the said Daniel made declarations, after that, to the effect that he had discharged the bond and had delivered it to the plaintiff; — but the evidence did not prove, to the satisfaction of the court, that the bond was any farther discharged, than by appending to it a receipt signed by said Daniel, acknowledging that certain payments were made, which, by the said bond, the plaintiff was bound to make to the other children of the said Daniel, nor that the bond was ever surrendered by the said Daniel to the plaintiff.

Upon these facts the court decided that the plaintiff was entitled to recover, and rendered judgment in his favor for the amount of the expenditures proved by him. Exceptions by defendants.

*C. W. Prentiss* for defendants.

The question involved in this case is, whether it was not necessary for the plaintiff to show a request by Alanson Seaver to him to provide, or a legal necessity of his providing, for his mother, in order to charge Alanson, and more especially his sureties, on the bond in suit. The object of the bond was, unquestionably, to secure the plaintiff against damages consequent on a legal liability. Voluntary charity, or voluntary provision made by the plaintiff, without legal compulsion by suit on his old bond, or without being charged under the statute provisions, or without showing any request by the plaintiff, or any danger of a suit being brought against him, — in short, without any proof whatever, except that he had made provision for his mother, — is not sufficient to render the defendants liable. It was, at least, incumbent on the plaintiff to show that his mother called upon him for necessaries, and that she was destitute, and in need of them.

As to sureties, it is said by BULLER, J., in *Straton* v. *Rastall*, 2 T. R. 366,—" But, as against a surety, the contract cannot be carried beyond the strict letter of it." The defendants' contract is, in substance, a contract of indemnity. *Douglass* v. *Clark*, 14 Vt. 177. The true construction of this is illustrated by the case of *Ferris* v. *Purdy*, 10 Johns. 359. The defendants never contracted to put the old bond out of existence, but only that the plaintiff should not, in consequence of its continued existence, come under any legal *necessity* to be at expense for his mother's support.

*Cooper* for plaintiff.

From the bill of exceptions it is difficult to understand what questions can be raised, as all the facts in the case are found by the court in favor of the plaintiff. An examination of the bond of July 11, 1821, is not indispensably necessary in order for the plaintiff to recover on the other ;—but if it were, the facts necessary to sustain a recovery by the plaintiff are found. And it distinctly appears that that bond was binding upon the plaintiff until the death of Martha Seaver. The plaintiff would be bound, both by that bond and by law, to provide for his mother. In either point of view, then, the bond on which the suit is predicated would bind the defendants.

The opinion of the court was delivered by

HEBARD, J. The principal question in the case arises on the defendants' plea of *non damnificatus*. Upon this plea, and not upon the assignment of breaches, the parties have taken issue.

To see whether the plaintiff had been *damnified*, it is necessary to see what were his liabilities, aside from those imposed upon him by the ties of nature and consanguinity. By the plaintiff's bond of July 11, 1821, he was bound to support his father and mother during their natural lives,—and, at the time of making the bond declared on, this bond was treated by the parties as an outstanding and subsisting liability against the plaintiff. By the bond declared on, the defendants assumed two distinct liabilities. One for the support of the plaintiff's mother, independently of what had before taken place, and the other to save the plaintiff harmless from his bond to his father for the same purpose.

The question that has been raised is, whether, in legal contemplation, the plaintiff could be said to be damnified, until he had been coerced in some way to support his mother. So far as any facts are to operate upon the question, they have been found by the county court. And in relation to the main question, the plaintiff was not bound to wait for a suit to be commenced against him on his bond, nor for the town to institute proceedings against him, to compel him to furnish a support for his mother. He was under subsisting liabilities in both these respects. We are not to presume that the court, in rendering judgment upon this issue, put an unreasonable construction upon the facts, or upon the defendants' liability.

The case finds that the plaintiff proved the amount of his expenditures,—and we are not to presume that this refers to expenditures voluntary on the part of the plaintiff, and such as his mother stood in no need of, nor such as Alanson Seaver was furnishing her. If such were the fact, the defendants would have seen to it, that a case was made up, presenting such a state of facts. But we are warranted in rejecting such a conclusion from the case as it is. The plaintiff would not be at liberty to furnish support for his mother at the expense of the said Alanson, unless the said Alanson neglected to do it himself. But, under the plea of *non damnificatus*, the court found the fact that the plaintiff furnished support for his

mother, and rendered judgment for the plaintiff,—which is that plaintiff had been damnified ; and this is to be understood in a legal sense.

But the defendants insisted that the original bond from the plaintiff to his father had been given up and cancelled, and that the plaintiff, therefore, was not liable at any rate upon that. It is a sufficient answer to that, to say that the parties, at the time of making the bond declared on, treated this as an outstanding liability,—and this was two years after the death of Daniel Seaver, the plaintiff's father.

It is farther insisted that at least the *sureties* of Alanson Seaver ought not to be held liable for those expenditures, unless they were such as the plaintiff was compelled, by legal process, to furnish. But there is no distinction, in this respect, between the principal and the sureties. Alanson Seaver had engaged to do certain things ; and for not doing them he was liable. The sureties engaged that he should do them, and for his not doing them *they* became liable. So that the same act, or neglect, that charges the principal, must charge the sureties. And the question returns to its starting place, and that is the liability of the said Alanson. Alanson Seaver, the principal, stands as guarantor of the plaintiff upon the first bond, and engages to do whatever the plaintiff, by that bond, was bound to do, and when Alanson failed to do that which he had thus engaged to do; the plaintiff might then proceed and discharge himself from liability upon his bond, and look to the defendants upon their bond.

But, aside from this view of the case, there is a difficulty in sustaining the defendants' position.

The defendants, instead of pleading to the plaintiff's assignment of breaches, pleaded generally *non damnificatus*,—and upon this plea issue was joined to the court, and the court, as matter of fact, have negatived the defendants' plea, and found that the plaintiff has been damnified. The case presents no question that was raised in regard to the proof under that plea, and no exceptions were taken to any ruling of the court, or any decision in relation to a question of law, under that issue. We must therefore take it for granted, after the finding of the court, that the plaintiff was *damnified*, and that the fact was proved by competent and sufficient testimony.

The case finds that the plaintiff proved his expenditures, but this

only applies to the extent in which he was damnified, and was necessary in order to ascertain the amount of damage which the plaintiff was entitled to recover.

The same may be said in relation to the question whether the plaintiff's bond, given to his father, had been cancelled. That was a question of fact, and the court have determined it.

Judgment affirmed.