[Civ. No. 3992. First Appellate District, Division One.—February 28, 1922.]

THEODOSIA COOK GRACE et al., Respondents, v. HER-MANN CRONINGER et al., Defendants; W. A. FRED-ERICK, Appellant.

[1] LANDLORD AND TENANT—USE OF PREMISES FOR SALOON BUSINESS —FAILURE TO SECURE LICENSE IN FIRM NAME—GUARANTOR NOT RELEASED.—In this action by a lessor against the lessees and their guarantor to recover a sum due as rent for the use of premises that were leased "for the purpose of therein carrying on the business of a saloon and cigar-store and for no other purpose or purposes whatsoever," together with interest and attorney's fees, there having been a completed contract, duly signed by the

necessary parties, free from any conditions or contingencies, and binding upon all the parties immediately upon its execution, the guarantor was not released from liability by reason of the fact that the liquor license was issued in the name of one of the lessees, and not in the firm name, as required by the municipal ordinance.

[2] ID.—COMMENCEMENT OF TERM PRIOR TO SECURING LICENSE— VALIDITY OF LEASE.—Such lease was not rendered unenforceable by reason of the fact that the liquor license was not obtained prior to the commencement of the term thereof, there having been no understanding or agreement that the lessees were to conduct a saloon illegally, but, on the contrary, the lease having expressly provided that the "tenants shall not do anything in the premises . . . which shall conflict . . . with any rules, regulations, or ordinances established by the Board of Supervisors . . . or any other board or department."

[3] ID.—FLOODING OF PREMISES WITH SEWAGE—EVICTION OF TENANTS— EVIDENCE—FINDINGS.—In this action by a lessor against the lessees and their guarantor to recover a sum due as rent for the use of certain premises leased for the purpose of carrying on the business of a saloon and cigar-store, conceding the guarantor was entitled to set up as a defense that through the negligence and fault of the lessor the premises were frequently flooded with sewage, the evidence introduced by him in support thereof was insufficient in law to constitute a breach of the covenant of quiet enjoyment, and the trial court was justified in concluding that there was no eviction on account of the sewer trouble and that it did not deprive the tenants of the reasonable use and enjoyment of the premises at any time during the period of the lease.

[4] ID.—EVICTION OF TENANTS—RIGHTS OF GUARANTOR—FAILURE OF TENANTS TO CLAIM OFFSET—CONCLUSION FROM.—Conceding that a guarantor of the payment of rent is entitled to urge all of the defenses allowed in law to the tenants, he is entitled to no greater rights; and the fact that in an action against a guarantor and the tenants the latter do not plead in their answers an offset based upon sewer trouble on the leased premises justifies the conclusion that the facts of the case do not authorize such a defense.

[5] ID.—ASSIGNMENT OF LEASE—CONSENT OF LESSOR—RATIFICATION— EVIDENCE.—In this action by a lessor against the lessees and their guarantor to recover a sum due as rent for the use of certain leased premises, in which the guarantor claimed that the lessor had consented to the assignment of the lease and that he was thereby released as guarantor, it was conceded that the lessor had not given her written consent to the assignment, as required by the lease, and the evidence was insufficient to prove that she afterward ratified the assignment.

[6] ID.—LIABILITY OF GUARANTOR FOR ATTORNEY'S FEES—CONSTRUC-TION OF LEASE AND GUARANTY.—The lease having provided for

the payment of attorney's fees in case the lessor should prevail in any suit brought by her thereunder, and the contract of guaranty having provided that in the event of the failure of the lessees to pay any of the rent due under such lease "or perform any of said covenant in said manner, that he . . . will pay said rent and perform said covenants at the time and in the manner in said lease provided," the liability of the guarantor thereunder was commensurate with the liability of the lessees, and in an action against the lessees and said guarantor to recover unpaid rents, the court properly charged the guarantor with attorney's fees.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Affirmed.

The facts are stated in the opinion of the court.

Keyes & Erskine for Appellant.

Goodfellow, Eells, Moore & Orrick and C. J. Goodell for Respondents.

KNIGHT, J., *pro tem.*—Plaintiff Theodosia Cook Grace, as the owner and lessor of certain premises situate in the city and county of San Francisco, was given judgment in this action against the defendants Hermann Croninger and Ernest Mohr as lessees, and against W. A. Frederick as guarantor, for the sum of $9,100, due as rent for the use of those premises, together with $750.05 interest, and $910 attorney's fees. From that judgment the defendant Frederick alone appeals. The action was dismissed as against the defendants Williams, Ruhstaller and Christensen.

The lessees Croninger and Mohr occupied the demised premises under an assigned lease, dated August 6, 1912. Jasper Williams was named therein as the original lessee, and Ruhstaller was his guarantor. On October 15, 1913, said lease was by and with the consent of the owner assigned to Croninger and Mohr, at which time the defendant Frederick became the guarantor. The premises were leased for a period of seven years, commencing on November 1, 1912, at the monthly rental of $650, "for the purpose of therein carrying on the business of a saloon and cigar-store and for no other purpose or purposes whatsoever." Croninger and

Mohr upon the execution of the assignment went into possession of the premises and under a permit and license issued by the city and county of San Francisco in the name of Croninger alone conducted a saloon therein until the end of July, 1917, at which time Croninger and Mohr sold their interests in said saloon to one Andrew Christensen and attempted to assign to Christensen their interest in said lease. Plaintiff Mrs. Grace repudiates said purported assignment to Christensen, and the trial court found that she was not bound thereby since she had not consented to the assignment nor subsequently ratified the same. Christensen nevertheless thereafter conducted said saloon under license issued in the name of Peter Christensen, and it was while the saloon was thus conducted by Christensen that there was a default in the payment of the rent for which plaintiff in this action was given judgment.

The respective answers of Croninger and Mohr contain no special defenses. They consist merely of denials of their liability for the rent incurred subsequent to the date on which they disposed of their interests to Christensen. The appellant Frederick in his answer has pleaded seven special defenses, three of which have been abandoned, and the trial court found against him on the remaining four. It is upon the findings upon these special defenses, and upon the further ground that the court was without legal authority to incorporate in its judgment an allowance for attorney's fees that the defendant Frederick appeals.

[1] It is first contended by appellant that the assigned lease from Williams to Croninger and Mohr never became effectual because no liquor license was ever issued to Croninger and Mohr in the firm name, as required by the municipal ordinance. Appellant argues that the assigned lease was inchoate and ineffectual until a license was issued in the joint names of the lessees, which admittedly was not done, the license, as above stated, having been granted to Croninger alone. In support of his position appellant relies principally upon the case of *Smith* v. *Luning Co.*, 111 Cal. 308 [43 Pac. 967]. We do not consider the case in point. In that case Smith, a street contractor, endeavored to recover upon a contract for the construction of a sewer, and it was held that the instrument sued upon never became a completed contract, not because the plaintiff had not obtained the neces-

sary permit to do the work, as claimed by appellant, but for the simple reason that the contract had not been signed by the requisite number of property owners in that block so as to make it a binding contract. The decision also rested largely upon the ground that the plaintiff Smith had performed no part of the work for which he was endeavoring to collect. In the instant case there was a completed contract, duly signed by the necessary parties, free from any conditions or contingencies, and binding upon all parties immediately upon its execution.

[2] Appellant also contends that the assigned lease is unenforceable because it was entered into with the understanding that the assignees were to carry on an illegal business, that is, the saloon business, without having a license for that purpose. It is the theory of appellant that because the license was not obtained prior to the commencement of the term of the lease it permeated and made void the entire transaction. In this respect appellant cites the following cases: *Teachout* v. *Bogy,* 175 Cal. 481 [166 Pac. 319]; *Riley* v. *Jordan,* 122 Mass. 231; *Mound* v. *Barker,* 71 Vt. 253 [76 Am. St. Rep. 767, 44 Atl. 346]. But the fatal weakness with that theory lies in the fact that the essential element of the rule announced in those cases is entirely lacking here, namely, that there was an understanding, agreement, or contemplation on the part of the one who seeks to take advantage of the contract or lease that a violation of law was contemplated or was necessarily bound to result from the operation of the business conducted under the lease. There is not the slightest evidence here to the effect that the plaintiff Mrs. Grace, when she consented to the assignment, contemplated or understood that a saloon was to be conducted illegally. The very terms of the lease show that her understanding was exactly to the contrary, for in the lease it is provided that the "tenants shall not do anything in the premises . . . which shall conflict . . . with any rules, regulations, or ordinances established by the Board of Supervisors . . . or any other board or department of the City and County of San Francisco."

The case in this respect is not unlike the case of *Burke* v. *San Francisco Breweries Co.,* 21 Cal. App. 198 [131 Pac. 83]. There the defendant, after leasing certain premises from plaintiff for the purpose of conducting a saloon and

lodging-house therein, was subsequently denied a renewal of its liquor license by the municipal authorities. Upon that ground defendant sought to evade the payment of the rent, claiming, as is claimed here, "that the contract of lease was against public policy and therefore void from its inception." Such contention was "based upon the assumption that by the terms of the lease the defendant was obligated to continue for the period of five years in a business which might at any time after the execution of the lease be declared unlawful." Such contentions were held unsound, the court saying, "They are founded upon the rule of law that no recovery can be had by either party to a contract the performance of which involves the violation of an existing law. This rule of law has no application to the facts of the present case. The lease in question does not purport to require the performance of an act in contravention of an existing law," and then in quoting from a similar case (*Burgett* v. *Loeb,* 43 Ind. App. 657 [88 N. E. 346]), the court says: "At the time of entering into the contract, that he [the lessee] might subsequently, by the proper authorities, be denied a license, was a probability well known to him. (Citing cases.) With this knowledge, appellant made his terms unconditionally. He took the risk of being held liable for the rents even though performance became impossible by reason of circumstances beyond his control."

The case of *Dunn* v. *Stegemann,* 10 Cal. App. 38 [101 Pac. 25], cited by respondents, serves as a good illustration of the application of the doctrine contended for by appellant. In that case the parties, in the face of the provisions of a municipal ordinance prohibiting saloons within 150 feet of any church or school, entered into a lease for the use of certain premises as a saloon within 150 feet of a church. The court held that the lease had for its very object the violation of law, and it left both parties where it found them.

Appellant has cited cases on two other principles of law, one to the effect that where personal services, such as those of a physician, are performed by a person who has no license to perform the same the services rendered are illegal and no recovery can be had therefor; the other to the effect that when a partnership has been conducted in violation of law the partnership transactions may not become

the basis of legal action at the instance of anyone of those who have participated in the illegal transactions. Neither of those principles is involved in the case at bar. For the reasons above stated we hold that the assigned lease was legal and binding upon the parties to it.

[3] Appellant next urges that he has been released from liability as a guarantor because, as he claims, the demised premises were, through the negligence and fault of the lessor, "frequently flooded" with sewage, which interfered with the use of the premises to such an extent as to constitute a breach of the covenant of quiet enjoyment. In this respect appellant contends that as guarantor he is subrogated to all the rights which the tenants may have to any damages sustained by the tenants by reason of said sewage, and may plead and rely upon the same as an offset to the payment of rent. Appellant fixes the amount of those damages in the sum of $10,000. Incidentally, appellant further contends that by reason of those damages the contract has been altered and his remedies have been impaired to such an extent as to release him as guarantor.

Although Croninger and Mohr were likewise sued for the rent, neither of them, in their respective answers, make any complaint about the sewage, nor do they plead a breach of the covenant of quiet enjoyment or make any claim as an offset or counterclaim by reason thereof. Conceding, however, the right of appellant as guarantor to plead this defense over the shoulders of his principals, the answer to his contention is that the evidence disclosed by the record is insufficient in law to constitute a breach of the covenant of quiet enjoyment, and the trial court so found.

The saloon and cigar-store in question was located in the basement of a five-story building, the upper floors of which were operated as a hotel. There is one sewer system for the entire building, the drains for the saloon being the last to connect with the building sewer before it empties into the main sewer in the street. On several occasions rags and other debris were carelessly thrown into the sewer, either by the tenants of the hotel or by those using the toilets in the saloon, which caused a stoppage of the sewer below the saloon toilets and thereby caused the water to "back up" through the bowls of the saloon toilets and overflow a portion of the saloon floor. When the overflow came the toilet

doors were immediately locked and remained so until the trouble was relieved, which was usually accomplished by the employees of the saloon by the use of a force pump or by stopping up the outlet to the toilets and thereby preventing further overflow, until the sewer cleared itself. On two occasions, once in 1916 and again in 1918, a plumber was called in, and he relieved the situation by opening up the sewer and removing the rags therefrom. On his first call his work consumed about two hours' time, and on the second only twenty minutes, the entire bill for his services and materials aggregating $6.75. The overflow was caused wholly from the improper use of the toilets and not, as appellant contends, from an inadequately and improperly constructed sewer. The evidence fully establishes the fact that the sewer system was standard and modern in every way, adequate in size, and conformed to all municipal requirements. The plumber testified that the trouble was something that was "liable to happen to any system of plumbing." From this and the other proof disclosed by the record we are satisfied that there is ample evidence to support the finding of the trial court that "the overflows were not of long duration nor continuous, but were occasional and of short duration," and that the "flooding" was only "to a small extent." [4] While it may be conceded that appellant, as guarantor, is entitled to urge all of the defenses allowed in law to the tenants, he is entitled to no greater rights, and it is obvious from the acts and conduct of the tenants themselves, both before and after the expiration of the lease, that they did not regard the sewer trouble with any degree of seriousness. They continued to occupy the premises without interruption or threat of abandonment. The doors of the saloon were never closed during the term of the lease, except when the law required all similar places to close, nor did the tenants ever demand a deduction from the rent on account of the sewer, except on one occasion when $50 was withheld for three days from one month's rent. And although both Croninger and Mohr are charged here jointly with Frederick for the default in the rent, they have wholly failed to plead in any of their various answers an offset based upon the sewer trouble. The fact that they have not done so justifies the conclusion that the facts of the case did not authorize such a defense. (*Callahan* v.

*Loughran,* 102 Cal. 476 [36 Pac. 835]; *Bell* v. *Haun,* 9 Cal. App. 41 [97 Pac. 1126]; *Evinger* v. *Moran,* 14 Cal. App. 328 [112 Pac. 68].) On this branch of the case we fully agree with the conclusions of the trial court that there was no eviction on account of the sewer trouble, nor did it deprive the tenants of the reasonable use and enjoyment of the premises at any time during the period of the lease.

The next and third point made by appellant is that the owner, Mrs. Grace, upon the demand of Frederick, failed to pursue certain remedies that were not available to him but which were available to her, and that her refusal to comply with such demand exonerated him as such guarantor. This contention is based upon the assumption that Frederick was a surety and not a guarantor. But a mere inspection of the terms of the assignment of the lease which Frederick signed will suffice to show that he was a guarantor. (*San Francisco Theological Seminary* v. *Monterey Co. G. & E. Co.,* 179 Cal. 166 [175 Pac. 693].) Therefore, this point is not available to appellant.

[5] Appellant's fourth point is that Mrs. Grace consented to the assignment of the lease from Croninger and Mohr to Christensen, and thereby released appellant as guarantor. The court found that Mrs. Grace did not consent to such assignment, and the evidence supports this finding. The lease itself provided that it could not be assigned without the written consent of the lessor, which it is conceded was not obtained, and the evidence falls far short of proving that Mrs. Grace, as lessor, afterward ratified the assignment. (*German-American Sav. Bank* v. *Gollmer,* 155 Cal. 683 [24 L. R. A. (N. S.) 1066, 102 Pac. 932].)

[6] Lastly, appellant claims that the court erred in charging Frederick with counsel fees. The lease provided ''in case the lessor prevail in any suit brought by her under this lease or any provision thereof the lessee shall be liable to the lessor for the fees of her attorney in a reasonable amount to be fixed by the court, and the amount so allowed for fees shall be taxed as part of the costs in such suit.'' In the assignment of the lease which Frederick signed it was stated, ''and the undersigned, W. A. Frederick, agrees with said Theodosia Cook Grace that in the event of the failure of said Hermann Croninger and Ernest Mohr or either of them to pay any of said rent or perform

any of said covenant in said manner, that he, the said W. A. Frederick will pay said rent and perform said covenants at the time and in the manner in said lease provided.'' It is apparent from the clause in the lease that Mohr and Croninger were liable for attorney's fees, and the liability of Frederick under the terms of the assignment is commensurate with the liability of Croninger and Mohr. (Sec. 2808, Civ. Code; *Bagley* v. *Cohen*, 121 Cal. 606 [53 Pac. 1117].)

Judgment affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 30, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 27, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.