[Civ. No. 5207. Second Appellate District, Division Two.—April 23, 1929.]

FLO ANDERSON, Appellant, v. EMMA C. SHAFFER, Respondent.

Arthur Crum for Appellant.

Adair & Adair for Respondent.

BURNELL, J., *pro tem.*—This is an appeal by plaintiff from a judgment dismissing her action, she having failed to amend her complaint after an order sustaining a demurrer thereto.

The complaint alleges the following facts: On April 1, 1912, plaintiff loaned $500 to one Shaffer, accepting as evidence of the latter's indebtedness his note for $500, dated April 1, 1910 (that date having been inserted by mutual mistake, all parties having intended the date to be written 1912), payable three months after date with interest at seven per cent per annum. To secure payment of this note Shaffer executed a chattel mortgage on personal property belonging to him. The note not being paid, plaintiff, on October 14, 1912, assigned it to one Snider for collection. Snider brought suit on the same day to foreclose the chattel mortgage, judgment therein was entered March 8, 1913, and on March 17, 1913, the property was sold by the sheriff, bringing the net sum of $138.55, which was credited on the judgment, leaving a balance due of $490.02, which was, on March 21, 1913, docketed as a deficiency judgment against Shaffer. No further amount has been paid on the note or deficiency judgment. On April 13, 1913, Snider assigned the said judgment to the plaintiff, the original payee named in the note.

It is further alleged: That at the time of the making and delivery of said promissory note and chattel mortgage by said F. A. J. Shaffer, and as a part of the same transaction, and in order to assure and secure the payment of said promissory note according to its terms, and for a valuable consideration, defendant made, executed and delivered to plaintiff an instrument in writing in words and figures following to wit:

"Los Angeles, California, April 2nd, 1912.

"This is to certify that in case of the death of my husband, F. A. J. Shaffer, before he pays a certain promissory note of April 1, 1912, and payable July 1, 1912, to Mrs.

Flo Anderson, that I will then pay the said note out of the life insurance on my husband namely F. A. J. Shaffer.

"Signed—EMMA C. SHAFFER."

Shaffer died about September 10, 1921, defendant being his widow, and it is further alleged that he was insured, that defendant was his beneficiary and had collected on his life insurance policy in an amount exceeding the amount due on the note, but had refused payment upon plaintiff's demand therefor.

The demurrer alleged failure to state a cause of action and the bar of sections 336, 337 and 339 of the Code of Civil Procedure.

We think the demurrer was properly sustained.

The note was executed April 1, 1912, and became due July 1, 1912. The indebtedness evidenced thereby became merged in the judgment entered March 21, 1913. (*Haub* v. *Leggett*, 160 Cal. 491 [117 Pac. 556] ; *Zirker* v. *Hughes*, 77 Cal. 235 [19 Pac. 423].) It is not alleged that this judgment was ever renewed or revived under the provisions of section 685 of the Code of Civil Procedure. Any action upon it was barred after five years (sec. 336, Code Civ. Proc.), which would commence to run after the time for appeal had elapsed, and the judgment attained finality. (*Feeney* v. *Hinckley*, 134 Cal. 467 [86 Am. St. Rep. 290, 66 Pac. 580] ; *Estate of Woods*, 137 Cal. 129 [69 Pac. 900] ; *Brandon* v. *Anglo California Trust Co.*, 177 Cal. 699 [171 Pac. 956] ; *Willard* v. *Dobbins*, 191 Cal. 287 [216 Pac. 1008] ; *Westphal* v. *Arnoux*, 51 Cal. App. 532 [197 Pac. 395].) As the time within which an appeal might be taken was, under section 939 of the Code of Civil Procedure, as it stood in 1913 and prior to the amendment of 1915, six months after entry of judgment, the judgment of foreclosure became final on the twenty-first day of September, 1913, assuming, from the failure to allege the contrary, that no appeal was taken. The five-year period of limitation, therefore, expired on September 21, 1918. The complaint herein was filed on July 15, 1925, or nearly six years and ten months after the statute had run upon the judgment.

"A married woman may enter into any engagement or transaction with another person respecting property which she might if unmarried" (Civ. Code, sec. 158).

The wife in this case, therefore, occupies the same position with respect to the transaction as if she were a stranger. The debt not being her own, and the property being her separate property (Civ. Code, sec. 162), she stands as surety of the husband for the payment of this debt. (*McDonald* v. *Randall*, 139 Cal. 246, 253 [72 Pac. 997].) Her obligation was that of a guarantor (secs. 2787, 2844, Civ. Code), and as such she was entitled to avail herself of every defense which her principal might have asserted inherent to the debt and not of a purely personal nature (*County of Sonoma* v. *Hall*, 132 Cal. 589, 593 [62 Pac. 257, 312, 65 Pac. 12]; *Baldwin* v. *Gordon*, 12 Mart. O. S. (La.) 378; *Jarett* v. *Martin*, 70 N. C. 459; Brandt on Suretyship and Guaranty, sec. 163), including the defense of the statute of limitations as to the principal debt. Her liability was commensurate with that of her principals (*Grace* v. *Croninger*, 56 Cal. App. 659 [206 Pac. 130]; sec. 2808, Civ. Code) and could not exceed it (sec. 2809, Civ. Code).

It is true, as appellant urges, that this is an action upon the guarantee and not upon the original debt or upon the judgment in which it has become merged, but it is likewise true that where the obligation of the principal has been extinguished, that of the guarantor (or surety as the case may be) is no longer enforceable. Some of the earlier decisions in this state expressed a view contrary to that just stated; thus, in *Whiting* v. *Clark*, 17 Cal. 407, decided in 1861, it was said: "This suit is brought on a guaranty by defendant of a debt of or for one Porter. The only thing set up in defense which it is necessary to notice is the plea that no suit has been brought to charge the original debtor, and that the Statute of Limitations bars the claim as to him. But this is no defense. After legally charging the defendant, the plaintiff was not bound to sue the principal; at least, unless requested by the guarantor; and the surety had in his own hands the means of protecting himself from loss by delay, by paying the debt and then suing the principal, or by filing a bill to compel the creditor to sue. By the guaranty the defendant became the debtor of the creditor, and no other limitation could defeat the claim than that prescribed by law for the class of

indebtedness evidenced by the paper." But this view was soon abandoned.

In *Paige* v. *Carroll*, 61 Cal. 211, the action was against a sheriff, and the sureties on his official bond, for the wrongful seizure of property. The cause of action as against the sheriff had become barred because not brought within two years after the seizure. The court said: "We cannot believe that the object was to allow a longer period for commencing an action against him and his sureties for such liability than is allowed for commencing an action against him alone for it."

In *County of Sonoma* v. *Hall, supra,* the action was against a county recorder and his sureties to recover fees which it was alleged the recorder had collected and failed to turn into the county treasury. The cause of action as against the recorder accrued "on the day after the first Monday in January, 1893." The suit was commenced on March 20, 1896, and the defendants set up the bar of the statute of limitations in their answer. It was held that the cause of action against the recorder (Hall) was one upon a liability created by statute, and hence was barred after three years by section 338, subdivision 1, of the Code of Civil Procedure. Quoting from the opinion of department one of the supreme court, confirmed by the court in bank, it was said:

"It follows that, independent of the official bond, the cause of action was barred at the time it was commenced as to defendant Hall. If there had been no bond executed by Hall, and this action had been brought against him alone, there would be no doubt but that it was barred at the time it was commenced. Does the statute apply to the sureties on the written undertaking? Or, in other words, can the sureties on the official bond plead the statute which has run against the cause of action?

"Sureties are never held beyond the strict terms of their contract, and, in general, they have the right to avail themselves of all the defenses that would be allowed by their principal. The object of requiring a bond from a public officer is that the county or state may be secured from any injury caused by the neglect of duty or dishonest act of the official. Here the bond was security to the county, and given, among other things, for the purpose of

indemnifying the county against the loss that it might suffer by the failure of Hall to pay the amount in controversy. The county had the right to look to the bond as security for the amount of all damages caused by the breach thereof, but it also owed a duty to the sureties. It should have brought the action for the breach before such action had become barred by the statute. The gist of the action is the failure of Hall to pay the moneys to the county. When he failed to do so, he committed a breach of the bond. The defendants, other than Hall, are made defendants for the purpose of securing a judgment against them, in order to collect the amount of damage caused by the breach. The bond is not the cause of action, but collateral thereto, and a means of which the county might avail itself. If the defendant Hall had, instead of giving the bond, given a mortgage upon real estate, properly conditioned, as indemnity for any breach of his official duty, the mortgage would have been an instrument in writing, but it could not be held to give a cause of action to the county after the time had run for commencing an action for the breach. Surely, the sureties cannot be in a worse position than the principal would have been if sued independent of the bond. If defendant Hall could escape liability by reason of the statute, the other defendants are certainly in no worse position. The bond did not impose upon Hall any duties other than or different from those created by the statute. It created no liability upon the sureties, so long as Hall performed his duties as required by the statute. The liability arose only when Hall neglected to make the payment. The bond was collateral security for the liability.''

One reason for the rule that when the principal debt has become barred by the statute the guarantor cannot be held is thus succinctly stated in *Ebner* v. *West Hollywood Transfer Co.*, 45 Cal. App. 186 [187 Pac. 114] : ''That principle is that the guarantor has certain rights of subrogation against the principal and, therefore, if the creditor allows the obligation of the principal debtor to expire by limitation, he seriously injures the guarantor, who is thus deprived of his remedy against the principal, and for this reason the creditor may not, under such circumstances, enforce the guaranty.''

In *Stone* v. *Hammell*, 83 Cal. 547 [17 Am. St. Rep. 272, 8 L. R. A. 425, 23 Pac. 703], the main facts were as follows: The plaintiff, Stone, and three others, Newell, Hamilton and Hayman, were sureties on a note made by defendant Hammell to one Stevens for $3,000, dated July 1, 1877, and payable one year after date. Newell had paid over $2,000 on the note and Stone paid to him (by notes) $1,000 as his *pro rata* contribution share. The action was by Stone to recover this thousand dollar payment from Hammell, the principal on the note. In reversing a judgment in favor of Stone, the court said:

"Now, in the case at bar, defendant was in no manner benefited by the notes given by plaintiff to Newell, nor was any debt or liability of defendant thereby extinguished; because at the time the notes were given there was no legal liability from the defendant to Newell, for the reason that any cause of action which the latter might have had against the defendant for moneys which he had paid to Byron Stevens had long been barred by the statute of limitations. The last payment made by Newell on the note to Stevens, as averred and found, was on January 10, 1881; and as his cause of action for the payments which he had made was not 'founded on a written instrument,' it was barred in two years—that is, on January 10, 1883. (*Chipman* v. *Morrill*, 20 Cal. 136.) But plaintiff did not give his notes to Newell until March 1, 1884. At that time defendant was under no legal obligation to anyone which plaintiff could discharge by giving said notes. The original note given to Stevens had itself been long since outlawed. Therefore by giving said notes plaintiff acquired no cause of action against the defendant herein."

The same rule has been followed in other jurisdictions. Thus, in *State* v. *Conway*, 18 Ohio, 234, where the action was against a sheriff and the sureties on his bond, the cause of action as against the sheriff had become barred by the statute of limitations before the suit was commenced. It was claimed that as to the sureties, however, the bond being an instrument in writing, a different period of limitation applied, within which the action had been brought. It was held that "the actual cause of action is not the execution of the bond,—that is more in the nature of collateral security,—but the cause of action is the misfeasance,

the false return. Without proof of the false return there could be no recovery. The action is, in effect, although not in form, an action against an officer for misfeasance in office. So far as actions of this character are concerned, the limitation acts upon the cause, not the form, of action.''

So here it may be pointed out that without proof of the original debt there could be no recovery. Again the learned chief justice, speaking for the court in the last cited case, said: ''If I am correct in these views, then it follows that had Alden (the sheriff) alone been sued upon this bond, and the breach assigned as it now is, he might have availed himself of the one year limitation provided in the statute. And surely his securities are in no worse situation than he himself would have been. If he could escape liability, they certainly can.''

The doctrine announced in *State* v. *Conway, supra,* was reaffirmed by the supreme court of Ohio a few years later in *State* v. *Blake,* 2 Ohio St. 147. We quote from the opinion:

''This suit is brought upon the official bond of Beam as auditor of Knox county. The breaches alleged consist of a great number of misfeasances and nonfeasances in the discharge of his official duties, which it is charged have resulted in injury to the county. To some of these breaches the defendants pleaded the statute limiting actions against officers for these causes to one year. This plea being demurred to by the plaintiff, presents the single question whether it constitutes a sufficient bar to the action. It is not doubted that this precise question was made and decided affirmatively in the case of the State for the use of *Mount Pleasant Bank* v. *Conway,* 18 Ohio, 234; but the correctness of that holding is denied. We have again carefully examined the subject, aided by the able and thorough discussion of counsel, and a majority of this court are of opinion that the law was correctly settled by our predecessors. In coming to this conclusion, we might with propriety stop; . . . I shall only notice such further considerations as the course of the present argument has made necessary; and in doing so, it is at once conceded that the action is in debt, founded upon a specialty, and contains an agreement in writing that Beam should well and truly perform all the duties devolved upon him as auditor of

Knox county, and that a failure to do so would be a breach of the bond for which both principal and sureties would be liable to make reparation to anyone injured thereby, and if the statute contained nothing further limiting such liability than the third clause of the first section of the 'act for the limitation of actions,' the liability would be governed by that clause, and would continue for fifteen years. At the same time it cannot be denied that such a bond is only a collateral security for the faithful performance of the official duties of the officer (*Walton* v. *United States*, 9 Wheat. 651 [6 L. Ed. 182, see, also, Rose's U. S. Notes]), and that the defendants are only liable as his sureties; and as such entitled to all the rights arising from that relation and growing out of the contract into which they have entered.

"From the first part of this proposition, it necessarily follows that the collateral obligation can exist no longer than the liability it was created to secure; while, upon the last, the universally acknowledged doctrine is, that 'it is of the essence of the contract of suretyship, that there be a subsisting valid obligation of a principal debtor. Without a principal there can be no accessory; and by the extinction of the liability of the former, the latter becomes extinct.' *Russell* v. *Failor*, 1 Ohio St. 329 [59 Am. Dec. 631]; Burge on Sur. 3; Theo. on Prin. and Sur. 2.

"Whatever, therefore, amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued upon the collateral undertaking. *Couch* v. *Waring*, 9 Conn. 261.

"Otherwise, the principal would be indirectly deprived of the benefit of a valid defense against the creditor by being compelled, in effect, to respond through his sureties; or the sureties would be deprived of their right to reimbursement from the principal, and thus one or the other be compelled to lose the rights which the law had secured to them.

"For every nonfeasance or misfeasance in office, the officer is liable to the party injured; and this is the liability which the principal has incurred, to which the official bond is accessory, and to which the sureties have undertaken to respond; the object and purpose of the law being to secure to the party injured the responsibility of others

than the officer, the more certainly to afford him satisfaction for his injury. Does this liability continue against the officer beyond one year? If not against him, it certainly cannot against his sureties.''

In *Bernd* v. *Lynes*, 71 Conn. 733 [43 Atl. 189], the defendant was administratrix of the estate of one Lacey. The action was on a written guaranty of the payment of a promissory note which had been indorsed on said note by the decedent in his lifetime. It read: ''For value received, I hereby guaranty the payment of the within note until paid.'' The court said:

''The defendant insisted that the plaintiff's right to recover on the said guaranty was barred by the statute of limitations; and this is the only question in the case. It is admitted that the cause of action against the maker of the note is barred. Counsel for the plaintiff in their brief, clearly and candidly state the question. They say: 'It may be conceded that, had the guaranty not contained the words "until paid" the statute of limitations would operate as a bar to the present action.' Stated in a little different words, the question is this: Does the cause of action against the guarantor continue after the statute of limitations has run against the principal debtor? The answer to this question depends upon the character of the contract of guaranty or suretyship; and the force of the words 'until paid' to enlarge that contract. What the character of that contract is was discussed by this court in the very recent case of *Eising* v. *Andrews*, 66 Conn. 65 [50 Am. St. Rep. 75, 33 Atl. 585]. What we said in that case is applicable in this: 'The rule is that a cause of action cannot exist against a surety, as such, unless a cause of action exists against the principal. Ordinarily, the liability of such a surety is measured precisely by the liability of the principal.' (Brandt, Sur., Sec. 125; *Seaver* v. *Young*, 16 Vt. 658; *Boone Co.* v. *Jones*, 54 Iowa, 709 [37 Am. Rep. 229, 2 N. W. 987, and 7 N. W. 155]; *Patterson's Appeal*, 48 Pa. St. 345; *McCable* v. *Raney*, 32 Ind. 309.) The obligation of a surety is an obligation accessory to that of a principal debtor, and it is of the essence of this obligation that there should be a valid obligation of some principal. Thus, when one agrees to become responsible for another, the former incurs no obligation as surety if no valid claim ever arises

against the principal. (Chit. Cont. [11th ed.] 788.) If the principal is not holden, neither is the surety; for there can be no accessory if there is no principal. (De Col, Guar. & Sur. [Am. ed.] 39; Add. Cont., sec. 1111.) The existence of a principal debtor is a condition precedent to the operation of the contract of a surety. (*Hazard* v. *Irwin*, 18 Pick. (Mass.) 95; *Swift* v. *Beers*, 3 Denio (N. Y.), 70; *Mt. Stephen* v. *Lakeman*, L. R. 7 Q. B. 202; *Mallet* v. *Bateman*, L. R. 1 C. P. 163.) This is only in accordance with the general law of contracts which prevents a contract from becoming operative unless and until all conditions precedent are fulfilled. (Brandt, Sur., sec. 214; *Farmers & Mechanics' Bank* v. *Kingsley*, 2 Doug. [Mich.] 379.) So, too, in general, whatever discharges the principal debtor discharges the surety. The liability of a surety, as such, on a claim which is good as against the principal, ceases as soon as the claim is extinguished against the principal. The nature of the undertaking of a surety is such that there can be no obligation on his part unless there is an obligation on the part of the principal. 'It is correctly laid down in Chitty on Contracts that the contract of a surety is a collateral engagement for another, as distinguished from an original and direct agreement for the party's own act; and, as is stated in Theobold on Principal and Surety, . . . it is a corollary from the very definition of a contract of suretyship that, the obligation of the surety being accessory to the obligation of the principal debtor or obligor, it is of its essence that there should be a valid obligation of such a principal, and that the nullity of the principal obligation necessarily induces the nullity of the accessory. Without a principal there can be no accessory. Nor can the obligation of the surety, as such, exceed that of the principal. . . . It would be most unjust and incongruous to hold the surety liable where the principal is not bound.' (Storrs, J., in *Ferry* v. *Burchard*, 21 Conn. 603.) The same general doctrine is held in many other cases in this state. (*Willey* v. *Paulk*, 6 Conn. 74; *De Forest* v. *Strong*, 8 Conn. 522; *Bull* v. *Allen*, 19 Conn. 101; *Glazier* v. *Douglass*, 32 Conn. 393; *Candee* v. *Skinner*, 40 Conn. 464.) The special claim in this case is that the words 'until paid' operated to enlarge the ordinary contract of suretyship, so as to take this case out of the general rule. We

do not think the words as here used can be given that effect. This case is the ordinary one of suretyship, and, when the cause of action has become barred by virtue of the statute of limitations, the cause of action against the guarantor also became barred."

Other cases announcing and affirming the same principle are: *Ryus* v. *Gruble*, 31 Kan. 767 [3 Pac. 518]; *Commissioners* v. *Van Slyck*, 52 Kan. 622 [35 Pac. 299]; *Davis* v. *Clark*, 58 Kan. 454 [49 Pac. 665]; *Ware* v. *State*, 74 Ind. 185; *Spokane Co.* v. *Prescott*, 19 Wash. 418 [67 Am. St. Rep. 733, 53 Pac. 661].

Had defendant in the case at bar actually paid the judgment after the expiration of the five-year period prescribed in section 336 of the Code of Civil Procedure, she could not have successfully maintained an action against the principal debtors for reimbursement, since such payment would have been a purely voluntary payment. (*Machado* v. *Fernandez*, 74 Cal. 363 [16 Pac. 19].) In *Schlitz* v. *Thomas*, 61 Cal. App. 635 [216 Pac. 51], the plaintiffs had guaranteed payment of a note executed by a corporation. The note and guarantee were both executed on December 1, 1912. The note was due one day after date. July 1, 1918, plaintiffs paid the amount of the note to the bank named therein as payee, and on June 23, 1919, began suit to recover the amount of such payment from the stockholders of the corporation which had executed the note. Appealing from a judgment in plaintiffs' favor, the defendants contended "that the liability of the corporation to pay the $4,000 note had been extinguished by the statute of limitations before the alleged payment thereof by plaintiffs and that therefore the payment was voluntary and gave plaintiffs no cause of action against the defendants." The court said: "This contention must be sustained. To entitle a guarantor or surety to reimbursement, contribution, or subrogation on account of payments made in behalf of his principal it must appear that such payments were made under compulsion, that is, under a legal obligation, and not as a mere volunteer.

The liability of the principal having thus been extinguished by the passing of the statutory period defendant as guarantor was under no obligation to pay the debt and the complaint therefore failed to state a cause of action

against her and the demurrer thereto was properly sustained.

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.