JACK SILVERMAN, Appellant, *v.* ISAAC GOLDMANN REALTY CORPORATION, Respondent.

First Department, April 24, 1931.

*Harris Jay Griston* of counsel [*George W. Israel* with him on the brief; *Milton Seymour Cohn*, attorney], for the appellant.

*Herbert S. Greenberg* of counsel [*Freedman & Greenberg*, attorneys], for the respondent.

SHERMAN, J. The tenant has unsuccessfully sought damages from defendant landlord for breach of a twenty-one-year lease, under which defendant agreed to erect upon its land in Queens county a public garage for his tenancy.

The term was to begin on August 1, 1927. The lease, dated

May 17, 1927, called for a deposit by the lessee of the sum of $1,000, which was paid. It contained many explicit covenants. The parties were aware, when the lease was signed, that defendant had several months theretofore made an application in concert with other property owners to the board of standards and appeals to have the area within which these premises were located zoned for business, and that the petition was pending undetermined. If the area became zoned for business, the contemplated garage could not be erected. The lease contained this paragraph, viz.:

" 25. The lessor makes no representation that the premises are available or suitable for the purposes of a garage or that a permit may be procured for the use of the premises for such purpose. In the event that the lessor fails to secure such permit or because of the unsuitability of the premises the lessor will be unable to construct a garage thereon, then and in that event this lease shall be cancelled and become null and void and the lessor shall return to the lessee the deposit received by the lessor from the lessee and neither party shall have any claim against the other."

After executing the lease, defendant contracted with a building corporation with a view to erecting the garage, and caused plans to be filed with the building department on June 6, 1927. The superintendent of buildings advised the applicant that the zoning of the area was in doubt and also called attention to several minor objections to the plans as filed. About six weeks thereafter the superintendent of buildings refused approval, not only because of the objections which had not been altogether remedied, but also on the stated ground that meanwhile the district had been zoned for business.

There is a dispute in the evidence as to whether plaintiff requested defendant to seek relief from this ban by an application to the board of standards and appeals. At any rate, it is undisputed that defendant did nothing further to procure permission to use the premises for garage purposes and finally in September sought to terminate its obligation by returning $1,000 to plaintiff, which plaintiff declined to receive on the ground that defendant had not made diligent efforts under the terms of the lease to procure the proper permit.

This action for damages followed, plaintiff claiming that under the above-quoted clause a duty rested upon defendant to take reasonable steps to procure a permit for the " use " of the premises for garage purposes. Defendant in its answer impliedly admits that a duty rested upon it by pleading that it had made " due effort * * * to procure a permit for the use of the premises for a garage."

Clearly this duty was not discharged by filing plans with the building department and leaving them pigeonholed as rejected. The language of paragraph 25 indicates that the permit which the landlord was to procure was for the use of the premises for garage purposes. Defendant might have taken steps to cause the application to restrict the area to have been withdrawn; or, having during its pendency purchased, as the evidence showed, a large quantity of property within the district, have undertaken to secure the consent of eighty per cent of the owners of the frontage immediately affected for the purposes of a variance under subdivision g of section 7 of the Building Zone Resolution of the City of New York; or have applied to the board of standards and appeals for a variance under section 7, subdivision e, or section 21 of the Building Zone Resolution of the City of New York. Such applications for relief are often granted.

Once the area became restricted, the application to the building department obviously could be productive of no result except the mere approval of the proposed structure as conforming to the rules of that department. It could not authorize the use of the premises for garage purposes. The application was utterly futile and destined to denial for lack of power to authorize the structure even if proposed to be constructed in conformity with the requirements of that department. Defendant concedes that it knew of this limitation of power.

To uphold the defense is to construe the lease as though it contained a provision making that instrument void in the event that the then pending application for the zoning restriction were granted. The lease contains no such provision, which might readily have been inserted if that had been the intent. The parties contemplated that the lease was to be effective and the garage erected if a permit for such use could be obtained, even though meanwhile the area were zoned for business use. The duty of applying for and attempting to secure the use permit rested upon the landlord. The evidence shows that it failed to use reasonable diligence to procure authorization for the contemplated use of the premises, thereby committing a breach for which it is liable in damages. (*Ciocca-Lombardi Wine Co., Inc.,* v. *Fucini,* 204 App. Div. 392; affd., 236 N. Y. 584.)

The judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.