[L. A. No. 17151. In Bank.—September 19, 1939.]

R. R. STOCKBURGER, Respondent, v. FRANCIS H. DOLAN et al., Appellants.

[L. A. No. 17150. In Bank.—September 19, 1939.]

FRANCIS H. DOLAN et al., Appellants, v. R. R. STOCKBURGER et al., Respondents.

Edward C. Purpus for Appellants.

A. L. Abrahams for Respondents.

EDMONDS, J.—In two actions which were consolidated for trial in the superior court and are presented together upon appeal, the court is called upon to determine the rights of lessors of land to rental under an oil and gas lease.

The litigation between the parties commenced when Francis H. Dolan and his wife sued to recover delay rental in

the sum of $12,000 alleged to be due under a lease entered into by them with R. R. Stockburger as lessee. Thereafter, Mr. Stockburger filed an action against the Dolans to recover $5,000 paid by him upon the execution of the lease. His suit was brought upon the theory that as the land leased to him was zoned against oil drilling operations by the city of Los Angeles and the city had refused him a permit therefor, there was a failure of consideration which entitled him to recover the rental paid by him. He also relied upon the same facts as a defense to the action brought by the lessors. Upon findings that the lease was made for an unlawful purpose, the court entered judgment for Mr. Stockburger in both cases.

The lease, executed in 1936, is for a term of twenty years, and so long thereafter as oil is produced from the property. The rental prescribed is $5,000, paid by the lessee at the time it was executed, a one-sixth royalty, and, commencing with the fourth month of the term, the sum of $1,000 per month if the lessee has not commenced drilling operations on the land or terminated the lease. The lessors' action is to recover rent for the year commencing September 1, 1937.

It is conceded that at the time the lease, prepared by the lessee, was executed by the parties, the land upon which the lessee was to drill for oil was zoned by ordinance for residential purposes, yet it does not mention any restriction upon the use of the property. However, the record shows that the lessee, after entering into the lease, endeavored to secure a permit allowing him to drill for oil. This variance from the zoning requirements was sought by a petition filed by the lessee with the board of city planning commissioners pursuant to the terms of the ordinance which provides that the board may recommend to the city council a reclassification of the property.

This petition was denied without prejudice and sent to the city council with the request that it be returned for reconsideration after further study. Later the board disapproved the request, but Mr. Stockburger did not prosecute an appeal to the city council as allowed by the ordinance, nor did he take any further steps in the matter.

The lessee maintains that because of the restrictions imposed upon the use of the land by the zoning ordinance, the lease was illegal *ab initio* and that there has been a failure

of consideration. However, the lessors contend that a contract *malum prohibitum* but not *malum in se* is enforcible if its object can be lawfully accomplished, and that as the municipal ordinance provided for the reclassification of property within the zone after petition and hearing, the lessee may not recover without proof of inability to obtain a drilling permit.

One provision of the lease is as follows: "The obligations of the Lessee hereunder shall be suspended while the Lessee is prevented from complying therewith, in whole or in part, by strikes, lockouts, action of the elements, accidents, rules and regulations of any Federal, State, Municipal or other governmental agency, or other matters or conditions beyond the control of the Lessee, whether similar to the matters or conditions herein specifically enumerated or not." The lessee, therefore, is not required to carry out his obligations during the time he is unable to drill or produce oil because of the zoning regulations, but they do not relieve him from all responsibility under the lease. The purpose of the agreement between the parties was to allow the lessee to drill for oil, but it is not contended, nor may it be presumed, that there was any intention to do so in violation of the city ordinance. The lease does not require any act to be done in contravention of existing law and the lessee does not assert that he undertook the obligations assumed by him in ignorance of the zoning requirements nor because of any representations concerning their effect. He drew the lease and provided that he would not be liable for rent during the period that he was prevented by governmental regulations from complying with his agreement. This provision contemplates that there might be some period when zoning or other regulations would interfere with the purposes of the lease and the parties agreed that the lessee's obligations would be "suspended" for that time.

This is not an unusual situation and a lease which contemplates action by governmental authorities before the property may be used for the purpose specified in it is not illegal. For example, property may be leased for saloon purposes to one who does not have a license to engage in that business. (*Grace* v. *Croninger,* 56 Cal. App. 659 [206 Pac. 130] ; *Burke* v. *San Francisco Breweries, Ltd.,* 21 Cal. App. 198 [131 Pac. 83] ; *Shedlinsky* v. *Budweiser Brewing Co.,* 17 App. Div. 470 [45 N. Y. Supp. 174].) Also, leases of property for pur-

poses not allowed by existing zone regulations have been upheld where they have been entered into upon the agreement that application should be made to the board of standards and appeals for a variance, as provided by the zoning ordinance. (*Silverman* v. *Isaac Goldmann Realty Corp.,* 232 App. Div. 292 [249 N. Y. Supp. 505]; *Say-Phil Realty Corp.* v. *De Lignemare,* 131 Misc. 827 [228 N. Y. Supp. 365]; *Louis Friedman Realty Co., Inc.,* v. *De Stefan,* 220 App. Div. 661 [222 N. Y. Supp. 371].)

The lessors offered to prove that by an oral agreement, made contemporaneously with the lease, the lessee agreed to seek such a variance but that he did not use due diligence in making application to the proper authorities of the city. This testimony was rejected by the trial court upon the ground that it tended to vary the terms of the agreement made in writing. However, an oral understanding that the lessee should procure a zone variance does not contradict the written contract, which is silent upon this point, but would be consistent with its terms. The testimony was, therefore, admissible in evidence and should have been received. (*Buckner* v. *Leon & Co.,* 204 Cal. 225 [267 Pac. 693]; *Lindsay* v. *Mack,* 5 Cal. (2d) 491 [43 Pac. (2d) 350]; *Gardiner* v. *Burket,* 3 Cal. App. (2d) 666 [40 Pac. (2d) 279]; *Greathouse* v. *Daleno,* 57 Cal. App. 187 [206 Pac. 1019]; 6 Cal. Jur. 265; 4 Cal. Jur. Supp. 96.)

So far as the record shows, the lessee may now, or at some future time, procure a zone variance which will permit him to use the property for the purposes specified in the lease. There has, therefore, been no failure of consideration entitling him to recover. Liability for delay rental presents a different question and depends, primarily, upon whether the lessee agreed to seek a reclassification of the property.

The lessors urge that under no circumstances may the lessee take advantage of the provision suspending payment of rental because it was agreed that this provision should not apply to any time when drilling was prohibited by the terms of the zoning ordinance. However, evidence to that effect would vary the terms of the contract in that particular and was properly rejected by the trial court.

The judgment in the action entitled *Dolan* v. *Stockburger* (No. L. A. 17150) is reversed; the judgment in the action entitled *Stockburger* v. *Dolan* (No. L. A. 17151) is reversed

with directions to the superior court to enter judgment for the appellants.

Shenk, J., Curtis, J., Pullen, J., *pro tem.*, York, J., *pro tem.*, and Waste, C. J., concurred.

Rehearing denied.