HERBERT H. FREY *vs.* IVER JOHNSON SPORTING GOODS
COMPANY.

Suffolk.   March 14, 1912. — May 27, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Contract,* Construction, Performance and breach. *Patent. Words,* "Improvement."

An inventor assigned to a purchaser "the full and exclusive right to" his inven-
tion as described in specifications which with an application for a patent he had
filed with the United States commissioner of patents, and the purchaser in a
contract in writing agreed that, "upon the final allowance of said patent" he
would pay to the inventor $1,000.   The contract contained no warranty as to the
novelty of the invention described in the specifications, and no undertaking that
the patent to be issued should be coextensive with the claims set forth in the
application or that the whole invention was patentable.   Following repeated
rejections by the patent examiner, there were successive amendments filed with
the commissioner of patents as to the inventor's claims of novelty and finally
a patent was issued which, while not coextensive with the invention as originally
claimed, covered all of the original claims which the patent office recognized as
patentable.   *Held,* that the contract meant that the $1,000 became due to the
inventor upon the issuing of a patent covering the whole or any part of the
claims, either as originally set out or, by implication, as subsequently amended.
At the trial of an action by an inventor against a purchaser of his invention for
breach of a contract whereby the purchaser agreed to pay to the inventor a
certain sum of money upon the issuance of a patent upon claims which at the
time of the contract the inventor had filed with the United States commissioner
of patents, or upon claims subsequently filed by way of amendment, if it appears
that a patent finally was issued upon an amended claim which, while narrower
than the claim originally filed, covered all of that claim which was patentable, and
if there is no contention that the narrowing of the claim was due to fraud on
the part of any one, evidence of admissions by the inventor that the patent which
was issued did not include the important elements of his invention is immaterial.
Where an inventor sells and assigns to a purchaser "the full and exclusive right
to" his invention as set out in a specification of claims filed with an application
for a patent in the United States patent office, "together with all improvements
which may be made thereon under the scope of said patent," he is not required
to submit to the purchaser any improvement which he has thought of but has
not worked out.

CONTRACT for the alleged breach of a contract in writing as to
the sale of an invention for preventing vehicles from skidding,
known as a "chain traction device."   Writ dated May 14, 1909.

In the Superior Court the case was tried before *King,* J.

It appeared that on January 28, 1907, the plaintiff executed

specifications preparatory to applying for United States letters patent upon his invention. On February 4, 1907, he sold, assigned and transferred to the defendant "the full and exclusive right to said invention as" set forth and described in the specifications "together with all improvements which may be made thereon under the scope of said patent," and authorized the commissioner of patents to issue the letters patent to the defendant. On the same day, as party of the first part, he made with the defendant as party of the second part the contract which is the subject of this action. The substance of the contract was as follows:

"Whereas the party of the first part has invented a certain new and useful improvement in anti-skidding devices known as a 'chain traction device' as set forth and described in the specifications prepared and executed by the party of the first part on or about the 28th day of January A. D. 1907 preparatory to obtaining letters patent of the United States therefor, and

"Whereas the party of the first part has this day assigned to the party of the second part all his interest to and in said invention, together with all improvements which may be made thereon under the scope of said patent,

"Now therefore in consideration of one dollar and other valuable considerations by each of the parties hereto, to the other paid, the receipt whereof is mutually acknowledged, it is further agreed as follows: —

"1. Upon the final allowance of said patent the party of the second part agrees to pay forthwith to the party of the first part the further sum of one thousand dollars in cash.

"2. The said party of the second part shall pay to the party of the first part the sum of three cents royalty upon each of said devices, as sold, up to and including two hundred thousand of said devices, when said royalty shall cease."

On February 1, 1907, the plaintiff by his attorneys had filed with the United States commissioner of patents an application for letters patent with specifications of three claims of novel inventions as follows:

"1. An anti-skidding attachment for wheels, comprising a member crossing the tire and a connected attaching device adapted to be maintained in its operative position by a spoke.

"2. An anti-skidding attachment comprising a member to cross

the tire and a flexible attaching device adapted to be knotted about a spoke.

"3. An anti-skidding attachment, comprising a chain and a flexible attaching device engaging the chain and held in position by a spoke."

The claims were examined at the patent office and were rejected because of lack of novelty, patents previously having been issued to other persons covering the same inventions.

The plaintiff's attorneys then amended the application by cancelling the previous claims and substituting therefor as the claim, "an anti-skidding attachment for wheels comprising a tire crossing member, a flexible attaching member adapted to be knotted about a spoke and an end thereof removably connected to an end of the tire crossing member." This claim also was rejected and the plaintiff's attorneys cancelled it and substituted the following two claims:

"1. An anti-skidding attachment for wheels comprising a metallic tire crossing member, a flexible cord-like attaching member adapted to be wound and knotted about a spoke, and a hook secured to each end of the attaching member and removably connected to the adjacent end of the tire crossing member.

"2. An anti-skidding attachment for wheels comprising a flexible cord adapted to be wound and knotted about a spoke, a hook attached to each end of the cord and having an open, contracted throat, and a chain to cross the tire and adapted to be connected at its end with the hooks, the end-most links of the chain having a portion reduced in thickness to enter the contracted throats of the hooks."

The first of these claims was rejected and, finally, letters patent were issued on the second.

The defendant admitted the due execution of its contract with the plaintiff, the tender by the plaintiff to the defendant of the letters patent and that it had not paid the plaintiff the sum of $1,000 provided for in the agreement.

There was some evidence, admitted without objection, tending to show that the plaintiff had failed to submit to the defendant any improvements which he might make upon the patented device, and the judge ruled that that raised the only question for the jury. He therefore submitted to them the question,

"Were any improvements on the device involved in this suit made by the plaintiff prior to the issuance of letters patent and not submitted to the defendant?" and upon that subject charged them in part, as follows:

"Are you satisfied from the evidence that any actual, physical improvement was made of the device which has been submitted before you? . . . If it was an improvement thought of by the plaintiff, but never in fact worked out, I charge you that he would not be under any obligation to convey that until he had worked out that improvement in some feasible shape. . . . Consider whether there is anything you can put your finger on in the evidence which warrants you in saying that any actual improvement was made — not thought of. And if any was made, what was it? And in what respect was it an improvement? And if any was made . . . is there any evidence that warrants you in finding that the plaintiff was not ready to give it to the defendant?"

The defendant asked for the following rulings:

"2. There is no evidence that the plaintiff has performed the special contract sued upon according to its terms."

"5. The plaintiff cannot recover on the evidence in this action for a breach of the contract sued upon.

"6. The verdict must be for the defendant.

"7. The plaintiff did not secure the final allowance of a patent which was in accordance with the specifications referred to in its declaration.

"8. The device described in the specifications referred to in the plaintiff's declaration differs materially from the device described in the patent as issued.

"9. The rejection of the plaintiff's three claims by the patent office conclusively determined that the matter contained in those claims is not covered by the patent as issued.

"10. The extent of a patent is determined by the matter set forth in the claims.

"11. Under a patent obtained on the specifications originally submitted by the plaintiff the defendant would have the right to prevent all other persons from maintaining such a device in operative position by means of a spoke; under the patent as granted the defendant has no such right.

"12. Under a patent obtained on the specifications originally

submitted the defendant would have the right to prevent other persons using any flexible attaching device in connection with similar appliances; under the patent as granted the defendant has no such right."

"14. All parts of the device in evidence could be made freely by any other person without infringing on the plaintiff's rights except the hook with the contracted throat and the links in the chain reduced in thickness."

"16. Unless the patent as finally issued is the same as set out in the [original] specifications . . . the plaintiff cannot recover the $1,000 claimed.

"17. Unless the patent as finally issued is substantially the same as set out in the [original] specifications . . . the plaintiff cannot recover the $1,000 claimed."

The rulings were refused. The jury answered the question submitted to them in the negative and found for the plaintiff in the sum of $1,110. The defendant alleged exceptions.

*C. H. Donahue,* (*W. P. Meehan* with him,) for the defendant.

*W. P. Murray,* (*A. Hyman* with him,) for the plaintiff.

RUGG, C. J. This is an action for the breach of a written contract. The contract recited that the plaintiff had "invented a certain new and useful improvement in anti-skidding devices . . . as set forth and described in" certain specifications preparatory to obtaining letters patent. The defendant then agreed "upon the final allowance of said patent" to pay to the plaintiff $1,000. This action is to recover damages for breach of this agreement. An assignment of the invention from the plaintiff to the defendant was executed contemporaneously with the agreement. A patent was finally issued, which was not coextensive with the invention as claimed. Various claims of novelty made by the plaintiff were rejected by the patent office, but it is apparent from the evidence that the patent solicitors representing the plaintiff narrowed the claims from time to time only as they were disallowed by the officials of the patent office. It appears from the evidence that the patent as issued covered all of the original claims of the plaintiff which the patent office has recognized as patentable.

The first question presented is whether the ruling was correct to the effect that the proffer of the patent issued was a compliance by the plaintiff with his agreement. The contract of assignment,

although describing the invention by reference and otherwise, contained no warranties as to its novelty. The assignment from the plaintiff to the defendant was of all his right, title and interest in and to the invention. The subject-matter of the contract is fully set out. It is the invention for which the plaintiff had filed an application for a patent. It was described at length in papers referred to in the agreement and was known to both parties. There was no concealment or misunderstanding about its nature. The contract contains no agreement, representation or undertaking on the part of the plaintiff that the patent to be issued shall be coextensive with the claims set forth in his specifications, nor that the whole invention is patentable. The substance of the agreement is that the invention, whatever its novelty may ultimately turn out to be, is assigned, and if any patent issues covering the whole or any part of the claims, as originally set out and by implication as subsequently amended, then the subsequent payment provided for shall be made. It follows that there was no question of fact upon this branch of the case. There being no stipulation as to the extent of patent which might issue, the contention of the defendant is unsound, to the effect that the question should have been submitted to the jury, whether the patent was substantially the same as that set out in the specifications.

The proffer of evidence of admissions by the plaintiff that the patent did not include the important elements of his invention was properly excluded, for it had no bearing upon the issue of law, which was the meaning of the contract, nor upon the issue of fact, which was as stated by the judge in his charge whether there had been a breach of contract on the part of the plaintiff such as prevented him from recovery. No contention was raised at the trial, either by the pleadings, requests for rulings or statements of claim by counsel, that the plaintiff by fraudulent collusion with others had caused the patent to be narrower than the invention as set forth in the specifications. Hence this point although faintly argued before us is not open. We do not intimate that the evidence excluded with its setting in the case would have been enough, even if this question had been seasonably presented.

By the contract the plaintiff assigned to the defendant any improvements which he might make within the scope of the patent. The question whether improvements had been made and not sub-

mitted to the defendant as required by the contract was passed upon by the jury. The charge of the judge in this respect was not open to exception. In substance, it required the jury to be able to find some improvement made by the plaintiff and not turned over to the defendant. The distinction between a mere creature of the mind which would not constitute an improvement, and a thought worked into a feasible physical entity, which would constitute an improvement, was correct.

The defendant's requests for rulings were all properly refused. Some of them, to the effect that the plaintiff was not entitled to recover, manifestly could not have been given. However sound others of them may have been as abstract propositions of law, they were not applicable to the terms of the contract as we have interpreted it. It is not necessary to examine them in detail, because they were either inapplicable or unsound in law.

*Exceptions overruled.*