JAMES E. LEWIS *vs.* GRACE E. LEWIS.

Suffolk. November 19, 1914. — February 27, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Practice, Civil,* New trial, Mistrial, Secret instruction. *Words,* "Pleading or procedure."

Where a judge, who had presided at a trial, sent from the lobby of the court to the jury in their retiring room, without the knowledge of the counsel on either side, an answer in writing to a question in writing from the jury and with his answer sent a statement that the question and the answer were immaterial, and where nothing was known in regard to the substance or the nature of the question or the answer except that in the opinion of the judge they were immaterial to any issue submitted to the jury, this was *held* to constitute a mistrial and to require that a verdict returned by the jury after the communication was received by them should be set aside.

The giving of such a secret instruction is an error of substance in regard to an essential feature of trial by jury and is not a "matter of pleading or procedure" within the meaning of St. 1913, c. 716.

RUGG, C. J. The plaintiff and the husband of the defendant were copartners in the coal business. The defendant was appointed administratrix of the estate of her husband. After some negotiation an agreement was reached whereby the plaintiff bought the share of his deceased partner in the business for $40,000. An "Indenture of Sale" was executed by the defendant both as administratrix and individually, transferring to

him all the right, title and interest of the estate of his former partner in the firm assets, including all accounts and bills due to the copartnership, he assuming all its debts and obligations. In the meantime, after the decease of the husband but before the sale, the plaintiff advanced to the defendant $720 through checks of J. E. Lewis and Company, the style of the former firm, and coal to the value of $60.75. This action is brought to collect these charges. No mention was made of this account at the time of transfer of the share of the deceased in the partnership, and the plaintiff did not then inform the defendant that she would be required to pay it. No reference is made to the matter in the indenture of sale. The evidence was in conflict touching the point whether before the sale bills therefor had been sent to the defendant and a demand for payment had been made upon her.

The jury were instructed in substance that they were to determine on all the evidence whether both the plaintiff and the defendant understood that the personal account against Mrs. Lewis here in suit should be wiped out. Various requests for rulings by the defendant presented in different forms the proposition that the plaintiff as surviving partner was under a general duty to make full disclosure of the affairs of the partnership to the defendant. However sound in law these requests may be, they were not germane to the issue raised. Here was no question of concealment, fraud or misrepresentation. It is not contended that the price agreed upon for the sale of the partnership interest was not fair. There was no doubt about the fact that the items in the plaintiff's account had been furnished to the defendant. The real point of disagreement was whether the parties intended to extinguish liability for these items by transactions connected with the sale. The presiding judge* performed his duty by stating the simple issue and leaving it to the jury as a plain controversy of fact far better than by undertaking to lay down principles of law more or less remotely connected with the general relations of the parties, but which had nothing to do with the matter in dispute. No error is disclosed in the requests refused or in the rulings given.

---

\* *Morton,* J.

The troublesome aspect of the exceptions is this: After retiring for deliberation, the jury sent a written request for information to the judge, who was in his lobby. Without causing the jury to be brought into open court and without returning to the court room, he gave an answer in writing and thereupon the jury returned a verdict for the plaintiff. Both parties, with their counsel, were in the court room during the entire period from the time when the jury retired until the verdict was returned. The nature of the communication was not given out, is not disclosed on the record, and the excepting party is ignorant of the contents of the communication from the jury to the judge and from the judge to the jury. Immediately upon learning these facts, the defendant filed a motion for a new trial founded upon them. After a hearing the judge denied the motion, filing therewith a statement printed in the footnote.*

It is plain that apart from St. 1913, c. 716, this irregularity would have required a setting aside of the verdict. This was settled in 1823 by *Sargent* v. *Roberts*, 1 Pick. 337, where in an illuminating opinion by Chief Justice Parker, the principle was established "that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in the presence of the counsel in the cause. . . . The only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever

---

* "The written instructions referred to in the motion for a new trial consisted of a written answer to a written question sent to the judge by the foreman of the jury under the following circumstances:

"The judge had retired to the Superior Court lobby to await the verdict on the last case of the session, court not having been adjourned. The communication referred to was brought to the lobby between one and two P.M.

"The judge, believing that counsel had gone to their offices, and that an answer to the question, which in his opinion was immaterial to any issue submitted to the jury, did not require counsel to be put to the inconvenience of returning to the court room, sent a written answer, accompanied by the statement that the question and answer were immaterial.

"The action of the judge, although it may be deemed irregular, did not, in my opinion, injuriously affect the substantial rights of the parties, and therefore, in accordance with the provisions of St. 1913, c. 716, the motion is denied."

over the case, except in open court in the presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice." This case has been recognized generally as a leading case, and has been widely cited and approved. See notes 17 L. R. A. (N. S.) 609, 16 Ann. Cas. 1133, 1141, 14 Ann. Cas. 511, 514, where a large number of authorities are collected. It has been followed always in our own decisions. *Read* v. *Cambridge*, 124 Mass. 567.

In *Merrill* v. *Nary*, 10 Allen, 416, it was held that for the judge to permit the jury to take a copy of the statutes to their room without the knowledge of the parties was such an irregularity as to require the setting aside of the verdict. It was said by Chief Justice Bigelow, that "the only regular and safe mode of conducting trials is, for the court to instruct the jury on all material points before they retire to deliberate upon their verdict, and, if they have occasion for further information, they should return into court and state the questions on which they wish for further advice, and receive in open court such directions as may seem to the judge material and necessary."

But, as was said by Chief Justice Shaw in *Commonwealth* v. *Roby*, 12 Pick. 496, at page 516, "It is not every irregularity which will render the verdict void and warrant setting it aside. This depends upon another and additional consideration, namely, whether the irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict itself." In that case it was held, after a full review of authorities, that the irregularity of furnishing refreshment to the jury after they had agreed upon their verdict, but before it was returned into court, at their own expense, through the agency of the officer in charge, without direction of the court, although reprehensible, did not require a new trial.

In *Kullberg* v. *O'Donnell*, 158 Mass. 405, it was held that it was not reversible error for the judge, after the jury had been deliberating for a considerable time and had failed to agree, to call them into the court room and there openly give additional instructions in the absence of counsel, it being the duty of counsel or the parties to remain in court after the trial of an action was begun until it was finished, if they desired to be pres-

ent at all proceedings in the cause. But it there was said by Chief Justice Field, "It is plain . . . that all instructions to the jury must be in open court."

In *Commonwealth* v. *Heden*, 162 Mass. 521, it was held that it was not error for the judge to communicate to the jury through the officer in charge of them, that upon agreeing on a verdict it might be put in writing and they might separate.

In *Moseley* v. *Washburn*, 165 Mass. 417, the amount of the verdict depended upon two executions. Full instructions were given as to the computation of interest upon these sums, to which no exception was taken. Later, the jury sent a note to the judge by the officer, inquiring the date from which interest should be computed. Thereupon, by direction of the judge, the officer procured from the jury room the executions and the judge showed to him the date on each execution which had been pointed out to the jury in the charge, as the date from which interest should be computed, and directed him to return the executions to the foreman and to point out to him the dates which thus had been indicated. The officer followed these instructions and a verdict was returned for the plaintiff with interest computed accordingly. It there was said that, although the practice was not to be commended, it was not necessary to set aside the verdicts on the ground that the dates from which interest was to be reckoned had been pointed out correctly in the charge in open court and the interest became, therefore, a mere matter of method of computation which the record showed had been cast correctly. The opinion of the court, by Chief Justice Field, concluded as follows: "Under these circumstances it is certain that the instructions sent to the jury by the officer had no tendency to influence the decision of the jury upon the merits of the causes, and the irregularity does not seem to us of sufficient importance to require the verdicts to be set aside on the ground that there is or should be an absolute rule of law in such a case."

In *Whitney* v. *Commonwealth*, 190 Mass. 531, these facts appeared: Late in the evening, after the judge had gone home, a distance of several miles, the jury, having agreed upon their verdict, were in doubt which of several forms handed them to use in expressing their decision, which doubt was communicated to the judge by the officer in charge of the jury. Thereupon the foreman,

in the presence of all the jury and the officer, and with no other person present, telephoned the difficulty to the judge, who over the telephone repeated to the foreman in substance what had been said in the charge as to which forms were intended to express the different conclusions reached. The foreman then repeated this statement to the jury in the telephonic hearing of the judge. The jury were within the hearing of everything said by the foreman and the foreman repeated to the jury everything said by the judge. It was said by Chief Justice Knowlton in delivering the opinion of the court, in effect, that this was a direction to the whole jury "merely as to the proper way to exhibit and preserve their verdict on paper, after they had decided upon it, so that there might be no mistake in presenting it to the court. The communication was, in principle, not very different from the common direction, given through the officer to a jury who agree in the night time, to seal up their verdict and bring it into court the next day. . . . It went a little further in telling them how to use the machinery that had been provided for that purpose, but the information was limited to assistance in the use of this machinery, and did not touch any matter that could affect the substance of the verdict itself, before it was agreed upon. There are grave objections to any communication with a jury made as this was. The possibility of misunderstanding or mistake involved in it is such as should preclude the adoption of it, unless in cases of great emergency; but the facts stated in this case make it certain that no miscarriage of justice has resulted. Limited as this communication was to a collateral direction as to the manner of using the papers supplied for the reception of the verdict, it does not require us to set the verdict aside."

In all these cases where it has been held that the irregularity was not fatal, the facts were disclosed fully and all that was communicated by the judge to the jury was plainly set forth on the record. In the case at bar, the excepting party did not know at the time and does not know now the substance or nature of the communication from the jury to the judge, nor of his reply. The statement filed by the judge throws no light upon the subject, and we are as ignorant as the excepting party. The question is, whether under these circumstances a new trial is required, in view of St. 1913, c. 716, § 1, whereby it is provided that "No

new trial shall be granted in any civil action or proceeding on the ground of improper admission or rejection of evidence, or for any error as to any matter of pleading or procedure, if, in the opinion of the judge who presided at the trial when application is made by motion for a new trial, or in the opinion of the Supreme Judicial Court when application is made by exceptions or otherwise, the error complained of has not injuriously affected the substantial rights of the parties." The judge who presided at the trial has expressed his opinion of harmlessness as to the matter under review in the phrase of the statute.

The statute does not reach to such a situation as that here presented. It is not plainly stated that the question of the jury and the answer of the judge related to a matter of law. But it is almost inconceivable that a jury should propound any question to a judge whose purpose was not to gain some information about the law. The statement of the judge seems to indicate that it related to law. The inference from all the circumstances is almost irresistible that it concerned some matter of law and hence must be treated on that footing. The giving of secret instructions as to the law is not comprehended within the words "pleading or procedure." It is to be noted that our statute relates only to pleading and procedure and does not extend to "misdirection" as does Order XXXIX. r. 6 of the English Rules of the Supreme Court. *Bray* v. *Ford,* [1896] A. C. 44. Correct instructions upon matters of law are of the very substance of jury trial at common law. *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, 476. This is different in kind from mere procedure. It is of last importance that parties and their counsel duly vigilant in the performance of their duty touching an action on trial have the opportunity to know the principles of law which are laid down for the guidance of the jury. Secret instructions or clandestine communications, no matter if given with the best of intentions, contravene this fundamental and essential conception of common law trial by jury. One of the distinguishing characteristics of the common law is that its trials are public. The incentives to the maintenance of correct principles and high ideals in the administration of justice which arise from the consciousness on the part of those who participate in trials, that they are open to the public, are important safeguards for the purity, impartiality and

learning of courts and for the uprightness, sound sense and integrity of juries. Hearings *in camera* in common law courts are so contrary to the spirit of that law as to be regarded as almost, if not quite, impossible. See *Scott* v. *Scott,* [1913] A. C. 417. That is the general rule. It has its roots far back in the history of the common law and of free institutions. It appears to be one of its most signal advantages. This feature is a priceless inheritance and one to a high degree calculated to preserve to the future the precious privilege of equality before the law. It is not necessary to discuss any apparent or real exceptions to this general rule, for certainly the present case cannot in any view fall outside that rule.

The communication in the case at bar must be treated as having been an instruction as to law. It was given in secret and not disclosed to counsel nor spread upon the record. All that is known respecting it is that the judge who gave it regarded it as immaterial. If it was immaterial, it ought not to have been given, though the giving of it publicly might not have been reversible error. But the fatal objection is that nobody else can tell whether it was immaterial or not. It was the right of the parties to know what it was, in order that they might determine that question for themselves and assent to it expressly or by silence, or to ask to have it reviewed on exceptions. That right was one of substance and not of form. It was denied. The failure to recognize it was not a mere error as to pleading or procedure, but as to an essential feature of trial by jury.

*Exceptions sustained.*

*A. E. Yont,* for the defendant.
*J. G. Wright,* for the plaintiff.