MANJA TRITSCH *vs.* AYER TANNING COMPANY, INC.

Middlesex.     April 4, 1944. — June 27, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Contract,* What constitutes. *Evidence,* Extrinsic affecting writing.

At the trial of an action of contract for goods sold and delivered, where it appeared that correspondence between the parties did not constitute their complete contract, testimony offered by the defendant properly was admitted to show the remainder of the contract, to explain ambiguous features of the undertakings of the parties as set out in the correspondence, and to show that the contract was not a contract of sale.

CONTRACT.    Writ in the Superior Court dated February 9, 1943.

The case was tried before *O'Connell,* J.

*A. M. Ginzberg,* for the plaintiff.

*H. L. Barrett,* (*F. J. Cloutman* with him,) for the defendant.

WILKINS, J. The plaintiff, as undisclosed principal, brings this action of contract for goods sold and delivered, namely, certain sheepskins called shearlings. The defendant denies that there was a sale, but alleges that the arrangement was one whereby the defendant was to tan and sell the sheepskins to a customer previously found and out of the proceeds was to make payments to the plaintiff. The jury returned a verdict for the defendant.

The plaintiff's exceptions to the admission of evidence and to the denial of requests for rulings raise the question whether certain correspondence between one Freedman, the plaintiff's agent, and the defendant constituted a complete, unambiguous contract of sale which could not be added to or explained by parol evidence.

If the defendant was not precluded from showing by oral testimony that the agreement was not for a sale, there was ample evidence from which the jury could find that the understanding was that the skins were to be tanned at the defendant's plant at Ayer under the direction of one Hoffner, a friend of Freedman, and then were to be shipped to the Nashua Slipper Company at Lowell, to which they had already been sold by Hoffner; that the Nashua Slipper Company was to pay the entire purchase price to the defendant, which was to forward to Freedman seventy-five cents for each large, and forty-five cents for each small, skin, pay ten per cent to Hoffner for his services, and retain the balance for the use of its tannery and equipment; that a promissory note from the defendant to Freedman intended by way of security was never given because some skins, after being processed, were sent to the Nashua Slipper Company, which returned them without payment; that Hoffner disappeared, and the defendant told Freedman to remove the skins; and that Freedman took a few skins as samples in an unsuccessful effort to make another sale.

Both Freedman and Burns, the treasurer of the defendant, testified that Hoffner informed Burns at the outset that Hoffner had already sold the skins to the Nashua Slipper Company, and, according to Burns, exhibited a "written document verifying the sale." The correspondence upon

which the plaintiff relies as constituting the contract must be read in the light of this undisputed fact. The first letter dated July 27, 1942, from the defendant to Freedman read as follows: "At the suggestion of Mr. Frederick Hoffner, we have agreed to the following proposition: You are to deliver to the Ayer Tanning Company about 3000 large Sheepskins, and about 1000 small Sheepskins. We agree to tan these sheepskins and sell them to the customer, whom Mr. Hoffner has secured. From the selling price we agree to pay you 75¢ ea. for the approximately 3000 large Sheepskins and 45¢ ea. for the 1000 small Sheepskins. The remainder of the selling price belongs to the Ayer Tanning Company, regardless of the price sold. Very truly yours Ayer Tanning Company, Inc. By: [Signed] Ray Burns. Accepted: M. M. Friedman By      ." The testimony of Freedman was to the effect that this was not acceptable to him and he declined to sign it. On August 8 the defendant wrote Freedman: "Upon delivery to tannery from M. M. Freedman of approximately 3000 large Shearlings and approximately 1000 small Shearlings (less than ¼ inch wool), the Ayer Tanning Company, Inc., hereby agrees to the following terms: . . . [Second paragraph omitted] Very truly yours, Ayer Tanning Company, Inc. By Ray Burns  Treasurer." The second paragraph was in error, and by telegram on August 11 Freedman brought this to the attention of the defendant, which on the same day telegraphed back: "Second paragraph of our letter of Aug 8th should read as follows: Our promissory note for the value of the above merchandise on receipt of invoice for maturity of no more than three months but with the expressed provision that note will be met before maturity when collection is made from customer or customers for this merchandise Ayer Tanning Co. Inc." On August 18 Freedman wrote the defendant: "This is pursuant to your letters of July 27 and August 8th, also your telegram to me of August 11th, in connection with your purchasing the shearlings that are located at the Munroe and Arnold–Merritt Express Company Warehouse, Salem, Mass. I have instructed them by written order to deliver to you all the shearlings that they

are holding in my name. They will inform you when they are ready for shipment. They are baling them in 50-skin lots so that they can be counted more readily. My invoice will go out to you just as soon as the count is verified. Yours truly, (signed) M. M. Freedman." On August 24 Freedman wrote the defendant: "I am herewith enclosing bill, covering shearlings that were at the Merritt Express Warehouse, Salem, Mass., subject to price and terms in your correspondence to me. I am attempting to release elsewhere enough skins to make up your order, but in the event it is not possible to get all of them, I wish to modify your order to the amount of skins I have available to fill it. Upon receipt of the enclosed invoice, will you kindly send me your note, as per agreement. Very truly yours, (Signed) M. M. Freedman." The enclosure read as follows: "August 24, 1942 Ayer Tanning Co., Inc., Ayer, Massachusetts. To M. M. Freedman, Agent — Acct. M. T. 3,225 Large Shearlings @ 75¢ $2,418.75 335 Small Shearlings @ 45¢ 150.75 Total $2,569.50 71 Bundles Terms: In confirmation of your letters of July 27th and August 8th, also telegram to me of August 11th, which is price above, and a promissory note of three months from date of this invoice, with the expressed provision that note will be met before maturity, when collection is made from customer or customers for this merchandise."

The engagements undertaken by the parties are obviously ambiguous in view of the earlier sale to the Nashua Slipper Company, the exact terms of which do not appear. Uncertainty also exists in other respects. Freedman's letter of August 18 referred to "your purchasing" "pursuant to your letters of July 27" and August 8 and the telegram of August 11, the first of which was possibly inconsistent with the other two, and certainly is inconsistent with the plaintiff's contention. Freedman's letter of August 24 enclosed "bill . . . subject to price and terms in your correspondence to me." The price appeared only in the originally unacceptable letter of July 27. The bill or invoice of August 24 was in "confirmation of your letters of July 27th and August 8th, also telegram to me of August 11th" and Freed-

man testified that in sending it he intended to confirm the letter of July 27. Apart from the payment to Hoffner and the undertaking, whatever it was, as to the promissory note, the letter of July 27 comprised in substance what the defendant still contends was the contract. The letter of August 8 merely provided for "delivery to tannery," as did the letter of July 27, but unlike that letter did not state for what purpose. The reference in the telegram to a promissory note "for the value" of the merchandise was at least as consistent with a transaction by way of security as in payment of a purchase price. The allusion in the telegram and in the invoice to collection from "customer or customers" clearly called for explanation, particularly as there was a reference to "the customer, whom Mr. Hoffner has secured" in the letter of July 27. There was no express promise by the defendant to "purchase" or "buy," no express promise by Freedman to "sell," and other than delivery to the tannery no clear statement of Freedman's obligation. What was written is as consistent with the defendant's contention as with that of the plaintiff. See *Cox* v. *Savage*, 209 Mass. 501, 508; *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, 158.

The correspondence was not "a written contract intended by the parties as a statement of their complete agreement." *Kesslen Shoe Co. Inc.* v. *Philadelphia Fire & Marine Ins. Co.* 295 Mass. 123, 129. See *Taylor* v. *Haverhill*, *ante*, 380, 382. Oral evidence was, accordingly, admissible to show the remainder of the contract. *Glackin* v. *Bennett*, 226 Mass. 316, 319. *Montuori* v. *Bailen*, 290 Mass. 72, 74, and cases cited. Evidence was also admissible to explain the ambiguous undertaking of the parties in so far as it was contained in the letters and telegram and to apply it to the subject matter. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477, 483. *Rizzo* v. *Cunningham*, 303 Mass. 16, 21. *Coleman Bros. Corp.* v. *Commonwealth*, 307 Mass. 205, 209. *Atwood* v. *Boston*, 310 Mass. 70, 74, 75. Williston on Contracts (Rev. ed. ) § 616.

The admission by Burns in his testimony that the correspondence constituted the entire contract does not help the

plaintiff.   It is still a question of law what was the contract and what is its meaning.   See *Boston Hat Manufactory* v. *Messinger*, 2 Pick. 223, 239; *Frey* v. *Iver Johnson Sporting Goods Co.* 212 Mass. 213, 218; *Bodell* v. *Sawyer*, 294 Mass. 534, 540.

The testimony of Burns, and of another witness called by the defendant, accordingly was rightly admitted, and the judge correctly denied the requests presented by the plaintiff.

The plaintiff's exception filed October 11, 1943, to the further instructions given October 7 in the absence of counsel after the jury had been sent out cannot be considered. Rule 72 of the Superior Court (1932).

*Exceptions overruled.*