[Civ. No. 17954. Second Dist., Div. One. May 31, 1951.]

W. C. KIRKER, JR., et al., Appellants, v. SHELL OIL
COMPANY (a Corporation), Respondent.

Dolley, Knight, Woods & Hightower, James M. Hall and Adolph H. Levy for Appellants.

O'Melveny & Myers, Homer I. Mitchell and Howard J. Deards for Respondent.

HANSON, J. pro tem.—The decision of this case turns primarily upon the question whether in a community oil lease, granted for a period of 20 years "and for so long thereafter as Lessee shall conduct drilling . . . or producing operations on the leased land, or be excused therefrom, as hereinafter provided; . . . ," a provision *not a part of the granting or habendum clauses*, requiring the lessee to commence drilling operations prior to a date therein named, is a *special limitation*, which automatically ended the lease for a breach thereof or whether it is a *covenant or condition subsequent* requiring by the terms of the lease a 90-day notice to make it effective. A subsidiary question is whether parol evidence was admissible to show the intent of the parties on that particular

point on the theory that the terms of the lease not only are ambiguous, but that such intent accords with representations made by lessee to lessor-appellants.

The trial court ruled the parol evidence was inadmissible and that the provision in the lease was not a special limitation, but merely an obligation or covenant requiring the 90 days' notice. We agree with the holding of the trial court.

Turning to the language of the lease we find, first, that the lessors granted their lands to the lessee for a period of 20 years for the purpose of prospecting and drilling for oil [and other substances] and producing it, and for so long thereafter as lessee shall conduct drilling . . . or producing operations on the leased land, or be excused therefrom, as hereinafter provided; *and the parties hereto agree as follows*: [We state the numbered articles and their language only so far as is material.]

"1. On or before the expiration of three years from the date hereof [March 15, 1944] Lessee shall commence operations for the drilling of a well on some portion of the leased land and shall thereafter prosecute such operations and the drilling of such well to completion, that is, until oil, . . ., is discovered in such well and it is put upon production, or until Lessee deems further drilling unprofitable. . . .

"2. The Lessee has paid to Owner rental in full hereunder for the period commencing on the date hereof [March 15, 1944] and ending March 15, 1945. In the event Lessee has not commenced operations for the drilling of a well on the leased land on or before the date last above mentioned, Lessee shall further pay to the owners of each parcel hereby leased, in person, rental at the rate of $50.00 per acre of such parcel per year, commencing on that date and *payable thereafter yearly in advance*. If Lessee shall commence operations for a well on the leased land prior to the expiration of the maximum time during which it is permitted to delay such operations under Article 1 hereof, it may during the remainder of said time, prior to the discovery of oil or any of the aforesaid other substances in paying quantities on the leased land, suspend or resume such operations at will, except operations for the drilling of an offset well; but whenever Lessee shall so suspend such operations during any period for which rental as aforesaid has not been paid, it shall, except for the time herein allowed it between wells, pay to the Owner rental at the rate above specified prorated for that portion of said period during which such operations shall be so suspended.

All rentals hereunder shall cease upon the commencement or resumption of any drilling operations hereunder or when Lessee surrenders its rights under this lease.

. . . . . . . . . . . . . .

"5. . . . The parties have expressed herein their entire understanding and agreement, and it is expressly stipulated that no implied covenant or condition whatsoever shall be read into this lease relating to the drilling or producing of any wells, offset or other, or to any other operations of Lessee hereunder or the measure of diligence therefor, or to any thing to be done hereunder by Lessee.

. . . . . . . . . . . . . .

"7. The performance of any of the obligations of Lessee hereunder may be delayed or suspended at any time while, but only so long as, Lessee is hindered in or prevented from performance by . . . , operation of law, or any cause, whether similar or dissimilar, beyond the reasonable control of Lessee. . . .

. . . . . . . . . . . . . .

"9. Lessee at any time whatsoever may, by written notice, surrender all or any part of the leased land and thereby and thereupon be released from all obligations accrued or to accrue respecting the land so surrendered, excepting accrued pecuniary obligations.

"Notwithstanding anything to the contrary herein contained, this lease shall not expire or be terminated as a result of any failure of Lessee *to conduct any operations* on the leased land until ninety (90) days after written notice from Owner demanding the performance of operations and failure of Lessee to comply therewith; . . . in case of failure of Lessee to comply with any of its obligations hereunder and the continuance of such failure for ninety (90) days after written notice and demand of Owner . . . ,then at the election of Owner this lease shall be forfeited. . . ." (Italics supplied.)

In view of the terms of the lease as quoted above, we turn first to the salient facts which are stipulated and, therefore, are undisputed. The predecessor of respondent, a subsidiary corporation by the same name, sought and obtained the master community lease here involved by procuring separate counterpart leases executed by some 200 landowners. The master community lease was fully executed by March 23, 1945, but thereafter on October 9, 1945, the premises were rezoned and accordingly could not be drilled without an application for,

and the granting of, a zone variance. Despite the fact that under the zoning ordinance the lessee could not drill the premises it paid to all the signatories the advance rental required on March 15, 1946. This latter payment extended the lease for all purposes to March 15, 1947. Prior to that date the lessee obtained from 90 per cent of the signatories and of ownership, under date of February 6, 1947, a written amendment of the lease, which substituted the words "four years" in lieu of "three years" in article 1 and an acknowledgment of payment of advance rental for the period March 15, 1947, to and including March 15, 1948. The appellants, however, refused to execute the agreement. No advance rental was thereafter tendered or paid to appellants. On or prior to March 15, 1947, the lessee had not commenced drilling operations on the premises nor had it made any application to the proper city authorities for any zoning variance. Likewise no such application had been made by any of the lessors. However, almost a year later, on February 2, 1948, the lessee filed such an application which was granted on April 27, 1948, and pursuant thereto the lessee on April 30, 1948, proceeded to drill on property covered by the lease other than that leased by appellants, the first, out of four wells, which was completed in August, 1948, as a producer. On November 3, 1948, employees of lessee called on appellants requesting they procure a quitclaim deed against a cloud that was preventing the payment of royalties to them under the provisions of the community lease. The deed was left with appellants who procured its execution and then forwarded it to the lessee. Thereupon beginning with February 23, 1949, and monthly thereafter respondent mailed its royalty checks to appellants. None of these checks were cashed. Instead on September 7, 1949, appellants served a notice on respondent which averred that respondent had breached the lease and demanded that it remedy such breaches and at the same time it declared the lease had ceased to exist on March 15, 1947. The appellants after the service of this notice instituted the present action less than 90 days thereafter.

Appellants contend, *first*, that the provision in article 1 requiring the respondent "to commence drilling" the leased premises within three years from the date of the execution of the lease is a *special limitation* upon the term set forth in the granting and habendum clauses of the lease, and as it was a special limitation it automatically terminated the lease; that article 9 requiring a 90-day notice to terminate is not

applicable because it deals only with obligations, and not limitations on the term of the estate. In support of this contention appellants argue that as article 1 requires respondent "to commence" drilling the premises within three years of the execution of the lease (which was executed on March 15, 1944), the article is not controlled by the provisions of article 9 as that article refers only to "a failure to conduct operations" or "a failure to comply with its obligations" neither of which, so the argument runs, applies to or encompasses the phrase "commenced drilling." In further support of the contention appellants argue that if the 90-day provision found in article 9 be held applicable it extends the term for drilling in article 1 to three years and 90 days whereas the term itself is only for three years. Hence, appellants argue it should not be held applicable or controlling. This, and additional arguments which we do not take time to state, leads us quite too far afield from the basic rules of law which must control our judgment. We turn to a statement of those rules and their application to the facts.

Initially, it will be observed from a reading of the lease that the granting and habendum clauses of the lease grant the premises for a term of 20 years with a proviso for an extension of the term, if a particular stated event should ensue. Such a grant created a determinable fee. (*Stephens County* v. *Mid-Kansas Oil & Gas Co.*, 113 Tex. 160 [254 S.W. 290, 29 A.L.R. 566] ; see, also, 1 Tiffany, Real Property (3d ed.) § 220, p. 385, n. 88; *Dabney* v. *Edwards*, 5 Cal.2d 1, 11 [53 P.2d 962, 103 A.L.R. 822] ; *Callahan* v. *Martin*, 3 Cal.2d 110, 120 [43 P.2d 788, 101 A.L.R. 871].) The lease is not a grant for three years (the drilling period set forth in article 1) and thereafter for 17 years (with the proviso annexed) if drilling operation should be begun prior to the expiration of three years. Instead the grant is of a leasehold estate determinable at the end of 20 years with a proviso extending it, if a stated event occurs, at or before the end of the 20 years.

Accordingly, the provision found in the lease requiring that the lessee shall commence operations for the drilling of a well on the premises on or before the expiration of three years from the date of the lease, i.e., on or before March 15, 1947, is necessarily either a condition subsequent or a covenant. While it seems to us plain it is a mere covenant the rules that govern, if it is a condition subsequent, are here the same. Accordingly, under well-established rules in the law of future interests the failure to drill within three years of the date of

the lease, i.e., March 15, 1944, did not cause an automatic reverter to the grantor of estate granted.

In arguing to the contrary, appellants cite section 23, Restatement of Property, reading as follows: "The term 'special limitation' denotes that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event, and thus provides for a terminability in addition to that normally characteristic of such interest." The phrase "that part of the language of a conveyance" refers not to any language whatsoever found in the deed, but to the operative language of the conveyance, i.e., the granting and habendum clauses (*Cf.* 4 Tiffany, Real Property, 3d ed., § 966, p. 29). What we here say is fully borne out by the illustrations and comments which immediately follow the quoted section of the Restatement. (See, also, 2 Powell on Real Property, § 187, p. 34.)

Moreover, it is a long-established rule of law that any language in a deed, subsequent to the granting and habendum clauses, may not modify, cut down or control those clauses, unless such clauses incorporate the additional language by express reference. In 1 Devlin on Real Estate (Deeds), 3d ed., page 310, quoting *Ray* v. *Spears Ex'r*, 23 Ky.L. 814 [64 S.W. 413] it is said: " 'It is well settled that the granting clause in a deed must prevail over the *habendum*, unless a contrary intention is shown by the deed. In this case both the granting and *habendum* clauses of the deed convey the fee forever, in as strong language as could be used. And after certain other property is conveyed the addition to or condition is added, which, it is claimed is a limitation, or which converts the title into a defeasible fee. It seems to us that the attempt to so limit the absolute grant is null and void, because utterly inconsistent with both the granting and *habendum* clauses of the conveyance.' "

Likewise in *Barnett* v. *Barnett*, 104 Cal. 298, 300 [37 P. 1049], it is said: "The rule that if the *habendum* is repugnant to the premises [the granting clause] it is to be disregarded, is only another form of the rule that 'if several parts of a grant are absolutely irreconcilable the former part prevails.' (Civ. Code, sec. 1070.) "

In the lease before us the operative words, by express reference, provide that the term may be further extended by reason of any excuses "hereinafter provided" in favor of the lessee, but otherwise none of the articles are included. Moreover, as the operative words of the conveyance are followed by the

phrase "and the parties hereto agree as follows:" which in turn is followed by the nine articles, it is apparent that the articles are mere covenants or, to use the phraseology of the lease, "obligations." Accordingly, the two appellants, as lessors in the community lease of their own property not being possessed of the lessee's estate, by an automatic reverter of the property leased by them, were in the same position as if there had been no breach, if such there was, of the failure of lessee to drill on or prior to March 15, 1947.

As the case of the appellants is rested squarely on the contention that the three-year provision in the lease is a limitation upon a defeasible estate, and not a condition subsequent or a covenant, we have in reality no occasion to enlarge further upon the facts of the case or the law applicable thereto. However, we think it permissible to say a few words more.

 If, as we have said, the three-year provision is not a limitation it follows from the language of the lease that if there was a breach by the lessee of its failure to drill on or before March 15, 1947, such a default could be taken advantage of by the lessors only by serving a 90 days' notice as provided by article 9. No such notice was served. Until such notice was served—and there was a failure to properly act upon it within 90 days, the lessors had no cause of action for an adjudication that the lease was at an end so far as appellants' property was concerned (*Swigert* v. *Stafford*, 85 Cal.App.2d 469 [193 P.2d 106]). Moreover, we think there was no breach of the provision requiring that the property should be drilled on or before March 15, 1947, for the reason that a zoning regulation, not shown to be invalid, prohibited the lessee from drilling. Such a regulation it is altogether clear falls within the scope of article 7 which expressly provides for the delay or suspension of performance of lessee's obligations (and drilling was an obligation) for so long a period as lessee was hindered or prevented from performance "by operation of law." (*Cf. Stockburger* v. *Dolan*, 14 Cal.2d 313 [94 P.2d 33, 128 A.L.R. 83].) To be sure the zoning regulations in a proper case could be varied upon an application filed long prior to the time the application was filed, but the lease placed no duty on either the lessee or the lessors to make such application and procure, if they could, the necessary variance. Possibly, a point we do not decide, the lessee upon service of notice requiring it to drill within 90 days might have been under an implied duty

to seek such a variance, but it committed no breach in failing to do so in the absence of such a notice. Hence, when it did begin to drill its action was timely under article 1 in view of article 7 which, in effect, amends the prior article.

 The ruling of the court in excluding the proffered parol evidence is patently correct. There is no ambiguity in the language of the lease as applied to the facts of the case. The so-called admissions against interest which appellants sought to prove were not admissions of fact but of law (i.e., a legal interpretation of the contract) and so were properly excluded. (*Tritsch* v. *Ayer Tanning Co.*, 316 Mass. 598 [56 N.E.2d 11].) Moreover, they were irrelevant and immaterial as the meaning of the language of the lease was for the court.

 The offer to prove that the lessee had represented to appellants at and prior to the execution of the lease that its obligation to drill on or prior to March 15, 1947, was absolute, and not subject to any qualification, was rightly excluded by the trial court as it was not made an issue by the pleadings. Fraud, of the grossest character, may not in any case be proved unless it is alleged.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 25, 1951, and appellants' petition for a hearing by the Supreme Court was denied July 26, 1951. Schauer, J., voted for a hearing.