DAVID JOHN RUNSHAW & another *vs.* JACOB W. BERNSTEIN.

Hampden.    April 8, 1964. — April 30, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Practice, Civil,* Communication by judge to jury, Verdict.  *Jury and Jurors.*

There was not such an irregularity as required setting aside of a verdict in an action and a new trial where it appeared that one evening, after the jury had retired to the jury room and counsel and the parties had left the court house, the jury sent a question of law to the trial judge in the lobby, that he there read aloud to the clerk and the court stenographer the question and an instruction which he then wrote, and sent the communication to the jury in the jury room, that shortly thereafter they returned to the court room and their verdict was recorded in the absence of counsel, that the communication was fully disclosed and became known to counsel, and that the instruction was not erroneous in law.

TORT.    Writ in the Superior Court dated November 27, 1959.

The action was tried before *Gourdin, J.*

*Edward L. Donnellan* (*William K. Danaher, Jr.,* with him) for the plaintiffs.

*Raymond T. King* for the defendant.

WILKINS, C.J.    This action of tort by the minor plaintiff for personal injuries sustained while a pedestrian in West Springfield on June 4, 1959, and by his father for consequential damages is brought against the owner and operator of an automobile.    After a trial by jury the defendant had verdicts, which were warranted by the evidence.

The questions before us arise out of an irregularity with respect to the deliberations of the jury.    The jurors retired for their deliberations on Thursday, May 31, 1962, about 2:55 P.M.    At approximately 10:15 P.M. the presiding judge, who was in his lobby, summoned the jury to the court room for further instructions.    These were given in the absence of counsel and the parties, who had left the court house. At 10:32 P.M. the jury again retired.    Shortly thereafter

the foreman, while in the jury room, requested a deputy sheriff to deliver to the presiding judge an envelope containing a question. This the deputy sheriff delivered in the lobby to the judge, who opened it and read aloud to the clerk of courts and court stenographer the following question on a piece of paper: "Is a reasonably prudent pedestrian after making a decision that he can cross the highway in safety obligated to continue his observation of the on-coming traffic as he crosses?" The judge, without calling the jury to the court room, wrote the following answer on the other side of the paper: "The jury must decide if he continues to observe or if he relies on the first observation. What does the reasonably prudent man do? (Return this slip to the Court)," and signed his name. After reading this aloud to those present the judge replaced the paper in the envelope and handed it to the deputy sheriff, who delivered it to the jury in the jury room. At approximately 10:55 P.M. they returned to the court room where their verdicts for the defendant were recorded in the absence of counsel.

The court was in session on Friday, June 1. On Monday, June 4, the plaintiffs filed in the clerk's office (1) an exception to the instructions given in the absence of counsel; and (2) a motion for a new trial, one ground of which was "That the presiding judge, without the knowledge of the plaintiffs or plaintiffs' counsel, transmitted secret written instruction on the law to the jury." The motion was denied, and the plaintiffs duly excepted.

The exception to the denial of the motion for a new trial raises the same question of law as does the exception filed to the instructions given in the absence of counsel. We do not discuss, therefore, the effect of the latter exception not taken within twenty-four hours after the giving of those instructions as required by Rule 72 of the Superior Court (1954).[1] See *McCoy* v. *Jordan*, 184 Mass. 575, 581–582; *Goodrum* v. *Grimes*, 185 Mass. 80, 82; *Tritsch* v. *Ayer Tanning Co. Inc.* 316 Mass. 598, 603.

---

[1] "When further instructions, rulings or directions are given in the absence of counsel after the jury have been sent out, exceptions thereto shall be taken within twenty-four hours thereafter."

The course followed in the case at bar is not to be commended, but it is not a necessary consequence that the verdicts must be set aside. It is a fundamental rule and the only safe procedure that all instructions by the judge to the jury should be given in open court. This was the view expressed in the leading case of *Sargent* v. *Roberts*, 1 Pick. 337, 341–342, and has been often restated. *Merrill* v. *Nary*, 10 Allen, 416, 417. *Read* v. *Cambridge*, 124 Mass. 567. *Lewis* v. *Lewis*, 220 Mass. 364. The absence of counsel is not fatal. Where counsel do not remain while the jury are deliberating, the judge may give further instruction in the absence of counsel. *Kullberg* v. *O'Donnell*, 158 Mass. 405, 407. *Haven* v. *Brimfield*, 345 Mass. 529, 532–533.

"But it is not every irregularity which will render the verdict void and warrant setting it aside. This depends upon another and additional consideration, namely, whether the irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict itself." So spoke Chief Justice Shaw in *Commonwealth* v. *Roby*, 12 Pick. 496, 516, where it was held that the furnishing of refreshment through the agency of the officer in charge to the jury at their own expense after they had agreed upon a verdict but before it was returned into court, while reprehensible, did not require a new trial.

In *Commonwealth* v. *Heden*, 162 Mass. 521, it was held that the judge was not in error in communicating to the jury through the officer in charge that upon agreeing upon a verdict it might be put in writing and they might separate.

In *Moseley* v. *Washburn*, 165 Mass. 417, after the jury retired, the foreman sent to the judge by the officer in charge a note which read, "Shall the jury compute interest from April 23, 1890?" The judge directed the officer to bring from the jury room the two executions in the two cases on trial. The officer did so. The judge then pointed out to the officer the date on each execution which had been previously pointed out in his charge in open court. The judge directed the officer to return the executions to the foreman and to point out the dates thus indicated. This the officer did, and the jury returned verdicts with interest computed according

to their instructions. At page 419, it was said in an opinion by Chief Justice Field: "The practice shown in the present cases is not to be commended; but we do not think that, as matter of law, it is necessary to set aside these verdicts. There was no dispute as to the time from which interest was to be reckoned, if the jury found for the plaintiffs. . . . [T]he instructions sent to the jury by the officer had no tendency to influence the decision of the jury upon the merits of the causes, and the irregularity does not seem to us of sufficient importance to require the verdicts to be set aside on the ground that there is or should be an absolute rule of law in such a case."

In *Whitney* v. *Commonwealth,* 190 Mass. 531, there was a petition for the assessment of damages for the taking of land. Late in the evening after the judge had gone to his home in another city, the jury, who had agreed upon their verdict, informed the officer in charge that they were in doubt as to which of several forms to use. By direction of the judge the officer conducted the jury to the room in the court house where the telephone was. There the foreman stated the problem over the telephone to the judge, who repeated to the foreman the substance of what he had said on this subject in the charge. The foreman repeated this to the jury so that the judge heard it over the telephone. The jury returned to their room and completed the filling out of the forms, which were sealed, and the verdict was returned to court the next morning. This court did not set the verdict aside, and said, through Chief Justice Knowlton, at pages 539–540, that this was a direction to the whole jury "merely as to the proper way to exhibit and preserve their verdict on paper, after they had decided upon it, so that there might be no mistake in presenting it to the court. The communication was, in principle, not very different from the common direction, given through the officer to a jury who agree in the night time, to seal up their verdict and bring it into court the next day. . . . It went a little further in telling them how to use the machinery that had been provided for that purpose, but the information was limited

to assistance in the use of this machinery, and did not touch any matter that could affect the substance of the verdict itself, before it was agreed upon. There are grave objections to any communication with a jury made as this was. The possibility of misunderstanding or mistake involved in it is such as should preclude the adoption of it, unless in cases of great emergency; but the facts stated in this case make it certain that no miscarriage of justice has resulted. Limited as this communication was to a collateral direction as to the manner of using the papers supplied for the reception of the verdict, it does not require us to set the verdict aside.''

The most recent decision of this court which considered the effect of an irregularity in a communication by the judge to the jury in the absence of counsel is *Lewis* v. *Lewis,* 220 Mass. 364, *supra.* There the jury, after retiring for deliberation, sent a written request for information to the judge, who was in his lobby. Without causing the jury to be brought into open court and without returning to the court room, where the parties and their counsel were, he gave an answer in writing, and the jury thereupon returned a verdict. The nature of the communication was not given out and was not disclosed in the record on appeal. The excepting party was ignorant of its contents. In passing upon a motion for a new trial, the trial judge filed a statement that the communication was brought to him between 1 and 2 P.M.; that he, supposing counsel had gone to their offices and not wishing to inconvenience them, sent the written answer, accompanied by a statement that the question and answer were immaterial; and that in his opinion his action did not injuriously affect the substantial rights of the parties. He denied the motion ''in accordance with St. 1913, c. 716.''[1]

---

[1] Section 1 of St. 1913, c. 716, provided: ''No new trial shall be granted in any civil action . . . for any error as to any matter of pleading or procedure, if, in the opinion of the judge who presided at the trial when application is made by motion for a new trial, or in the opinion of the supreme judicial court when application is made by exceptions or otherwise, the error complained of has not injuriously affected the substantial rights of the parties.'' See now G. L. (Ter. Ed.) c. 231, § 132.

In this court the exceptions were sustained.   The opinion by Chief Justice Rugg stated that the statute did not apply because the instruction must have related to law, and that "The giving of secret instructions as to the law is not comprehended within the words 'pleading or procedure.' . . . The incentives to the maintenance of correct principles and high ideals in the administration of justice which arise from the consciousness on the part of those who participate in trials, that they are open to the public, are important safeguards for the purity, impartiality and learning of courts and for the uprightness, sound sense and integrity of juries" (pp. 370–371).   After stressing that public trials are the general rule, the opinion continued (p. 371) : "It is not necessary to discuss any apparent or real exceptions to this general rule, for certainly the present case cannot in any view fall outside that rule. . . .   [T]he fatal objection is that nobody else can tell whether it [the communication] was immaterial or not.   It was the right of the parties to know what it was, in order that they might determine that question for themselves and assent to it expressly or by silence, or to ask to have it reviewed on exceptions.   That right was one of substance and not of form.   It was denied. The failure to recognize it was not a mere error as to pleading or procedure, but as to an essential feature of trial by jury."

In the case at bar the communication to the jury cannot accurately be called "secret," because it was fully disclosed and became known to counsel.   Its content not being in doubt, the objection termed fatal in the *Lewis* case is absent. It has not been, and could not soundly be, contended that the instruction was erroneous in law as was the instruction in *Fillippon* v. *Albion Vein Slate Co.* 250 U. S. 76, 82.   Hence, no valid exception would lie to the substance of the communication.   It must be conceded that the facts of this case are outside of those of any previous case before this court. Unless, however, there should be an absolute rule of law that whenever the instruction touches the merits of the jury's deliberation, it necessarily constitutes an irregularity "of such a nature as to affect the impartiality, purity and

regularity of the verdict itself," the verdicts should be allowed to stand. We decline to hold that there should be such a rule.

*Exceptions overruled.*